**LAKE MONROE REGIONAL WASTE DISTRICT, Appellant (Defendant Below),**

v.

**Ron WAICUKAUSKI, Prosecuting Attorney for the Tenth Judicial District of the State of Indiana, Appellee (Plaintiff Below),**

**and**

**LaSalle's Woods Association of Owners, and the Pointe Development Company, Appellees (Defendants Below).**

No. 53A04–8602–CV–52.

Court of Appeals of Indiana, Fourth District.

Dec. 16, 1986.

Stephen L. Ferguson, Ferguson, Ferguson & Lloyd, Bloomington, for appellant.

William H. Andrews, Michael L. Carmin, Cotner, Andrews, Mann & Chapman, Bloomington, for appellees.

Joseph D. O'Connor, III, Bunger, Robertson, Kelley & Steger, Bloomington, for La-Salle's Woods Ass'n of Owners.

CONOVER, Presiding Judge.

Defendant-Appellant Lake Monroe Regional Waste District (District) appeals a judgment declaring District to be the owner of a malfunctioning lift station, and therefore responsible for its operation and maintenance.

We affirm.

ISSUES

Restated, District presents the following issues for our review:[1]

1. whether res judicata barred the trying of title to the lift station in this action;

2. whether the trial court erred in determining District to be the owner of the lift station; and

3. whether the trial court erred in finding District should not be reimbursed for payments made for electrical service to the

---

1. District presented four issues for our review. One is District did not accept ownership of the lift station because the easement District accept-

ed did not include the lift station. We discuss this issue as part of our discussion of issue number 2 above.

lift station and the pump used to replenish a holding pond.

## FACTS

This controversy centers around a malfunctioning lift station component of a sewage treatment system built by Caslon Development Company (Caslon). The lift station is a concrete chamber which collects sewage effluent and pumps it through sewer lines to a treatment plant. The lift station has malfunctioned several times, causing raw sewage to overflow the top of the chamber and spill onto the surrounding ground. The sewage sometimes runs downhill toward Lake Monroe. That lake provides drinking water to area residents, and is widely used for recreational purposes.

The Monroe County Health Department, alarmed at the potential public health hazard, requested the Monroe County Prosecutor to intervene on behalf of the residents of Monroe County. The prosecutor brought a declaratory judgment action to determine who (a) owned the lift station, and (b) was responsible for its operation and maintenance.

The prosecutor named the following parties, all having some connection to the lift station, as defendants:

1. District, a state political subdivision which provides for the collection, treatment, and disposal of sewage in various areas of Monroe County,

2. The Pointe Development Company (Pointe), successor in interest to Caslon, the developer of The Pointe Resort located on Lake Monroe and builder of the sewage system servicing the area, and

3. LaSalle's Woods Association of Owners (LaSalle), an administrative body of the LaSalle's Woods Condominiums, currently the only source of sewage flow into the disputed lift station.

None of the parties admits ownership of the lift station. Pointe and LaSalle contend an agreement executed between District and Caslon includes the lift station as part of the sewage system transferred to District. District contends it cannot be named owner of the lift station by reason of an earlier, unsuccessful suit brought against it by LaSalle, or in the alternative, because of an easement which it claims is part of the agreement. The easement excludes the lift station, District asserts.

After a bench trial, the trial court issued findings of fact and conclusions of law determining District to be the owner of the lift station, and responsible for its operation and maintenance. District appeals.

## DISCUSSION AND DECISION

### I. *Standard of Review*

When presented with an appeal of a negative judgment, we will not set aside findings of fact and conclusions of law entered by the trial court unless they are clearly erroneous. *Abels v. Monroe County Educational Association* (1986), Ind. App., 489 N.E.2d 533, 540 (*reh. denied*); Ind.Rules of Procedure, Trial Rule 52(A). We neither reweigh the evidence, nor judge the credibility of witnesses. Rather we consider only the evidence most favorable to the judgment, together with all reasonable inferences arising therefrom. If there is evidence of probative value to support the trial court's judgment, it will not be disturbed. *Abels, supra,* at 540.

### II. *Res Judicata*

District first argues the trial court erred in failing to find this action as to District is barred under the doctrine of res judicata. District bases its argument on the grounds an earlier action was brought against District by LaSalle in which District prevailed because LaSalle's evidence in that trial was insufficient to establish District was the owner of the lift station. In this case, however, District neither affirmatively pleaded its res judicata defense by way of answer[2] nor offered evidence regarding the prior proceedings at trial. District's

---

**2.** District mentions the earlier suit in its answer. However, it did not plead res judicata as an affirmative defense as required by T.R. 8(C).

only attempt to present that matter for the trial court's consideration was by way of a motion to dismiss, attached to which as an exhibit was a certified copy of the findings of fact and order entered in the earlier suit between District and LaSalle.

■ Res judicata is an affirmative defense which prohibits a tribunal from considering an issue which has been litigated in a prior hearing. *Coleman v. Target Stores* (1983), Ind.App., 456 N.E.2d 723, 728. The doctrine of res judicata has evolved as a matter of public policy. Fairness to the parties and economy of time are the cornerstones of this policy. *Board of Zoning Appeals, City of Valparaiso v. Sink* (1972), 153 Ind.App. 1, 285 N.E.2d 655, 658–659.

Res judicata has been considered over the years as a defense which must be affirmatively pleaded before the second tribunal. *Id.*, 285 N.E.2d at 659; Indiana Rules of Procedure, Trial Rule 8(C). T.R. 8(C) reads in pertinent part:

(C) Affirmative Defenses. A responsive pleading shall set forth affirmatively and carry the burden of proving: ... res judicata, ... and any other matter constituting an avoidance, matter of abatement, or affirmative defense. A party required to affirmatively plead any matters, including matters formerly required to be pleaded affirmatively by reply, shall have the burden of proving such matters.

As noted above, District has not met these requirements. It neither pleaded res judicata as an affirmative defense nor, having the burden of proof on that issue at trial, offered evidence thereon.

Further, District's attempt to raise the res judicata issue by way of its T.R. 12(B)(6) motion to dismiss also fails. Res judicata also may be raised in a T.R. 12(B)(6) motion if the defense appears on the face of the complaint. *Thrasher v. Van Buren Township of Monroe County* (1979), 182 Ind.App. 121, 394 N.E.2d 215,

221; *Middelkamp v. Hanewich* (1977), 173 Ind.App. 571, 364 N.E.2d 1024, 1029. *Thrasher* presents facts almost identical to those here presented as to this issue. In *Thrasher*, although the complaint referred to a mandate proceeding and to a trustee's failure to comply, nothing in the complaint suggested the defense of res judicata applied in the case then at bar. There, the court held the complaint did not make out a defense of res judicata so as to permit the filing of a T.R. 12(B)(6) motion based thereon by the defendant in that case. *Thrasher*, 394 N.E.2d at 221.

■ In this case, the only reference made to the prior proceedings reads as follows:

12. A civil action between the Association and the District (Monroe Superior Court Division III, Cause Number CV8307–032D) failed to establish *responsibility for the treatment of sewage* at the Pointe ... (Emphasis supplied).

(R. 22). This allegation makes out no res judicata defense available to the District on the question of ownership of the lift station. Thus, such issue was not properly before the trial court because of District's T.R. 12(B)(6) motion to dismiss. To have such issue heard and determined, it was necessary to affirmatively plead such defense by way of answer and to offer evidence thereon at trial. It did not do so. Thus, the issue was not before the court below. By failing to properly plead and prove the issue, District has waived it.

### III. *Ownership*

District contends the trial court erred in finding the easement (a) contained an error, and (b) was not an exhibit to the agreement. In this regard paragraph 9 of the transfer agreement states in pertinent part

9. *Acquisition of Permits.* Upon execution hereof and delivery of the required easement, *the portions of the System* [3] *designated on Exhibit "A"*

---

**3.** Paragraph 1(c) of the agreement defines "System" as used therein to mean

(c) "System" shall mean and include the sewage treatment facility, all gravity lines, *all primary force mains and all primary lift sta-*

shall become *the property of Waste District and shall be maintained by Waste District.* Waste District agrees to apply for and maintain all required permits and orders necessary to render sewage treatment services and shall obtain approval from the governmental units to whose jurisdiction this Agreement, or the service to be rendered, is subject. (Emphasis supplied).

(R. 120). District claims because paragraph 9 of the transfer agreement refers to "the required easement", the easement described by metes and bounds prepared by Mid-States Engineering which accompanied the agreement (Defendant's Exhibit B, R. 162–164) controls. Since the metes and bounds description does not include a 16.03 foot section between the lift station and the main sewer line, line S–1, title to the disputed lift station was not transferred to District, and it currently has no responsibility for its operation and maintenance, District asserts.

Further, District claims the testimony of Robert Doty, Director and Past President of District, establishes the fact District never intended to accept the lift station, and the metes and bounds easement is proof of that intention. We disagree on all counts.

In its findings of fact, the trial court found the metes and bounds easement, as prepared by Mid-States Engineering, mistakenly omitted the additional 16.03 feet necessary to connect the lift station to the main sewer line.

The trial court's conclusion of law number four then deals with this subject. It states

4. The description for an easement prepared by Mid-states Engineering is not an instrument of conveyance or an exhibit to the Agreement and contains an error; it should include the additional description to lead to and include the lift station located at LaSalle's Woods.

█ The evidence unquestionably supports the trial court's findings and conclusions in this regard. Paragraph 9 of the agreement clearly indicates the portion of the system to be transferred to District was portrayed in Exhibit "A", the as-built survey, and "the required easement" was to describe that portrayal by metes and bounds. Further, the easement was not signed by either party to the agreement, and it was never recorded.

Next, the omission of the last legal call of 16.03 feet was inadvertent. A member of the Mid-States Engineering firm, preparers of the as-built surveys and metes and bounds easement, testified the firm was instructed to describe a particular portion of the system, beginning at the disputed lift station and ending at the sewage treatment plant. However, the typist who prepared the easement inadvertently cut off the last legal call on the description to be included in the easement. Work product notes from the engineering firm and a color coded line on the as-built survey portraying the portion of the system transferred to District support the trial court's conclusion the system intended to be transferred to District included the lift station in question.

Further, the evidence demonstrated the lift station was located at the low end of approximately 3,000 feet of six inch force main leading to another lift station. Unless the lift station in question is used in conjunction with its other components, the system will not do the job it was designed to do. The force main, unlike a gravity feed line, requires the lift station's pumping action to push the effluent through that main up the slope toward the treatment facility. District acknowledged it accepted title to this force main. Clearly, District cannot direct or control the flow of the effluent through this main unless it controls the lift station in question.

Finally, the evidence shows District maintained the lift station for a period of

---

*tions as constructed by Caslon* and *as shown on the as-built surveys* prepared by Mid-States Engineering Co., Inc., comprised of a Key Map attached as Exhibit "A", and the Parcel Maps attached as Exhibit "B" but not including service lines. (Emphasis supplied).

time. District has paid the bills for electrical service to the lift station since the agreement was signed in 1979.[4]

The rules regarding the reformation of instruments were succinctly stated in *First Equity Life Insurance Co. v. Keith* (1975), 164 Ind.App. 412, 329 N.E.2d 45.

> In Indiana, a trial court is permitted to reform written documents only in cases in which one party mistakenly executed a document which did not express the true terms of the agreement, and the other party has acted under the same mistake, or has acted fraudulently or inequitably while having knowledge of the other party's mistake.... Similarly, a mistake by the scrivener will permit reformation of the instrument, wherein it is logically indicated that both parties were mistaken as to the actual contents of the instrument.

*First Equity*, 329 N.E.2d at 48, 49.

The trial court correctly concluded the parties intended to transfer the disputed lift station to District as part of the system, and the metes and bounds easement was prepared in error. The court's order reforming that document was correct, under the facts here presented.

## IV. *Damages* [5]

District contends the trial court erred in finding it should not be reimbursed on its counter-claim for electrical service to the lift station and the holding pond pump. District's contention is based upon its earlier argument it neither owns nor is responsible for the operation and maintenance of the lift station. Having already discussed District's contention it does not own the lift station, we turn to its contention District should be reimbursed for the cost of electrical service to the holding pond pump.

The trial court held

> 8. The Pointe Development Company is not responsible for nor legally obligated to pay for electric service incurred at the lift station or by operation of the pump to replenish water in the holding pond on the golf course prior to July, 1982. All expenses incurred for operation of the pump to replenish water in the holding pond on the golf course subsequent to July, 1982, are the responsibility of The Pointe Development Company; however, the Waste District failed to prove with any measurable certainty, the amount of such expenses and has failed in its burden to prove the measure of its damages.

(R. 87). District introduced into evidence a list it had prepared of its monthly payments for electrical service for both the lift station and the pump from April, 1979 through May, 1985. Both the lift station and pump were connected to the same meter during part of this time. None of the parties suggested any method by which that portion of each monthly payment made by District attributable to the operation of the holding pond pump could be determined.

In *Indiana University v. Indiana Bonding & Surety* (1981), Ind.App., 416 N.E.2d 1275, 1288, Judge Miller said:

> To support an award of compensatory damages, facts must exist and be shown by the evidence which afford a legal basis for measuring the plaintiff's loss.

---

4. Even had we found conclusion number 4 was erroneous, such error would have been harmless. Erroneous conclusions of law must be deemed harmless when other conclusions, properly based on the facts, support the court's decision. *State ex rel. Blackwell v. Hatcher* (1981), Ind.App., 426 N.E.2d 118, 121. Conclusion of law number 6 states

> 6. A fair reading of the Agreement without reference to other documents or evidence clearly indicates that the disputed lift station, located near LaSalle's Woods, is included in the description of that portion of the sewage

treatment facility transferred to the Lake Monroe Regional Waste District.

This conclusion alone is sufficient to support the trial court's decision.

5. Prior to the transfer of the lift station, the pump which is used to replenish water in a holding pond on the golf course was connected to the same electrical meter as the lift station. The pump was not part of the transfer agreement. Sometime after the transfer District discovered this fact and the lift station was put on a separate meter.

The damages must be susceptible of ascertainment in some manner other than by mere speculation, conjecture or surmise and must be referenced to some fairly definite standard, such as market value, established experience, or direct inference from known circumstances.

Further, any award of damages (or in this case, no award) must be supported by probative evidence. *Nahmias Realty, Inc. v. Cohen* (1985), Ind.App., 484 N.E.2d 617, 621. There, we said

The word "probative" is defined as follows:

In the law of evidence. Having the effect of proof; tending to prove, or actually proving.

Testimony carrying quality of proof and having fitness to induce conviction of truth, consisting of fact and reason cooperating as co-defendant factors. *Globe Indemnity Co. v. Daviess*, 243 Ky. 356, 47 S.W.2d 990, 992. Black's Law Dictionary, Revised 4th Edition, p. 1267.

*Id.*

The list, standing alone, offers no substantial proof regarding the cost of electrical service attributable to the pump. The trial court recognized this fact in finding number 30. There, the court stated

30. Operation of the pump to replenish water in the holding pond for the golf course is sporadic, uncertain and follows no specific pattern. The pump is utilized as weather conditions dictate the need to replenish water in the holding pond. The cost for electricity to operate the pump for the holding pond subsequent to July, 1982, is uncertain and indefinite.

(R. 86).

Since no reasonable determination can be made on the costs of operating the pump, the trial court did not err in holding District failed to prove its damages in this regard. An award may not be based upon mere conjecture, speculation, or guess work. *Nahmias, supra,* at 621.

The trial court is in all things affirmed.

YOUNG, J., concurs.

MILLER, J., concurs in result.