**Michael McALLISTER, Lois McAllister and Gregory Zirkle, Appellants–Plaintiffs,**

**v.**

**Loretta A. SANDERS, or Her Devisees, Heirs, Next of Kin, Assigns and All other Parties Claiming an Interest in**

---

Real Estate Described Herein,[1] Appellees–Defendants,

and

Ken H. Williamson, Charles A. Gray and Hazel M. Gray, Appellees–Intervenors.

No. 76A03–1006–MI–306.

Court of Appeals of Indiana.

Nov. 12, 2010.

part of the township is located exercises that same power.

---

1. The named Defendants are not a party to this appeal. However, pursuant to Indiana Appellate Rule 17(A), a party of record in the trial court is a party on appeal.

Terry L. Cornelius, Cornelius & Weingartner, Fort Wayne, IN, Attorney for Appellant.

James O. Waanders, Indianapolis, IN, Craig T. Benson, Angola, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellants–Plaintiffs, Michael and Lois McAllister (collectively, McAllisters) and Gregory Zirkle (Zirkle), appeal the trial court's Order granting summary judgment in favor of Appellees–Intervenors, Ken Williamson (Williamson) and Charles and Hazel Gray (collectively, Grays), when the trial court concluded that there had been a common law dedication of the disputed parcel of land (disputed alley).

We affirm.

### ISSUES

The McAllisters and Zirkle raise two issues for our review, which we restate as the following:

(1) Whether the trial court erred when it found that there had been a common law dedication of the disputed alley; and

(2) Whether the trial court erred by failing to find that the McAllisters and Zirkle had acquired fee simple title to the disputed alley by adverse possession.

### FACTS AND PROCEDURAL HISTORY

The case arises from a disputed alley located in Shady Side Subdivision (Subdivision) on the southwest shore of Crooked Lake in Steuben County, Indiana. The disputed alley, which is approximately 15 feet in width and 65 feet in length, is located between platted Lots 18 and 19.

On August 9, 1905, Loretta A. Sanders (Sanders) subdivided a portion of real estate as Shady Side Subdivision, which is comprised of 58 Lots. The plat depicts these 58 Lots between a designated road known as West Shady Side Road on one side and on the shore of Crooked Lake, so that each Lot within the Subdivision has its own frontage on Crooked Lake. The plat also depicts three 15 foot wide and 65 foot long parcels of land, each designated as an "alley" and which extend to Crooked Lake. (Appellants' App. pp. 50–51).

Williamson has owned Lot 18 since April 30, 1973, and the Grays have owned Lot 19 since July 22, 1978. Zirkle and the McAllisters own real estate across the street from Lots 18 and 19. Neither the McAllisters nor Zirkle have direct access to Crooked Lake other than the disputed alley located between Lots 18 and 19.

On December 10, 2008, Zirkle and the McAllisters filed a complaint to quiet title on the disputed alley against "Loretta A. Sanders, or Devises, Heirs, Next of Kin and all other parties" by adverse possession. (Appellants' App. p. 1). A hearing was set for March 17, 2009, and was rescheduled, *sua sponte,* by the trial court for March 25, 2009. On March 25, 2009, the trial court entered a decree quieting title to the McAllisters and Zirkle by default, finding that they "have alleged and established that they have adversely possessed the real estate for a period in excess of ten (10) years prior to filing of the Complaint, and have met all requirements for adverse possession pursuant to the law of Indiana." (Appellants' App. p. 13). On June 4, 2009, Williamson and the Grays intervened in the quiet title action and filed a motion to set aside default judgment. On August 5, 2009, the trial court entered an Order setting aside default judgment with respect to Williamson and the Grays, finding that because Sanders

intended to make a common law dedication of the disputed alley, service of process on Williamson and the Grays by publication was insufficient to satisfy the requirements of due process.

On January 6, 2010, the McAllisters and Zirkle filed a motion to amend complaint to add a prescriptive easement claim, which was granted on January 20, 2010. On January 29, 2010, Williamson and the Grays filed an answer to the amended complaint and also asserted affirmative defenses. On February 2, 2010, the trial court entered an Order clarifying that "the judgment entered by the [c]ourt on August 5, 2009 was predicated upon the specific facts presented to the [c]ourt which pertained to Williamson/Gray. The same facts may or may not pertain to other [defendants]. The default judg[ment] set aside by the [c]ourt on August 5, 2009 pertained only to Williamson/Gray." (Appellants' App. p. 3).

On February 9, 2010, Williamson and the Grays filed a motion for summary judgment, arguing that Sanders had made a common law dedication of the Plat; the disputed alley was a public drive and not subject to adverse possession or prescriptive easement, and the McAllisters and Zirkle could not establish that they had a reasonable belief that they had paid property taxes on the disputed alley. On April 1, 2010, the McAllisters and Zirkle filed a counter motion for summary judgment, arguing that Sanders did not intend to make a common law dedication of the Plat, that they are entitled to a judgment of adverse possession and that property taxes on the disputed alley is not a question in issue. A hearing on the motions was set for April 27, 2010. On May 14, 2010, the trial court entered an Order, concluding in relevant part:

14. Loretta Sanders, who platted the Shady Side Subdivision, intended to

make a dedication to the general public of the disputed parcel of real estate. This conclusion is to be drawn from two (2) undisputed facts. First, there would have been no necessity for Loretta Sanders to have made her dedication of the disputed parcel of real estate solely to the owners of lots located within the Subdivision. Each lot set forth on the Subdivision already touches upon Crooked Lake. Secondly, the word "Alley" appeared upon the plat not once—not twice—but three (3) times.

15. The dedication of the disputed parcel of real estate by Loretta Sanders has been accepted by the public. It is true, that there is no record evidence of the disputed parcel of real estate having even been accepted by public authority. However, prior to 1988, a public dedication appearing upon a plat to a parcel of real estate could be accepted by public usage for a period of at least twenty (20) years.

16. In the case at bar, the undisputed evidence shows that the public had made use of the disputed parcel of real estate for a period of twenty (20) years prior to 1988. [ ].

17. It is true that there were but few people who used the disputed parcel of real estate in the case at bar. However, the number of users is not critical to a court's determination of whether a public dedication of a parcel of real estate has been accepted through public usage. [ ].

18. The [c]ourt concludes that the "Alley" located between Lots 18 and 19 as shown upon the Plat of the Shady Side Subdivision was dedicated for use by the general public, and that said dedication has been accepted through public usage for a period of time no less than twenty (20) years prior to 1988.

19. The [c]ourt concludes that Williamson and [the Grays] hold fee simple title to the centerline of the disputed parcel of real estate existing between Lots 18 and 19 burdened, of course, by the public dedication of said disputed parcel of real estate all as set forth upon the Plat of the Shady Side Subdivision. There exists in the record no evidence that it was the intent of Loretta Sanders when first conveying Lots 18 and 19 in the Shady Side Subdivision that the fee simple title to the centerline of the disputed parcel of real estate was not also to be transferred to the first owners of Lots 18 and 19. [ ].

20. By virtue of their fee simple ownership to the centerline of the disputed parcel of real estate, Williamson and [the Grays] need not prove to the [c]ourt that their ownership rights in the disputed parcel of real estate through the law of adverse possession or prescriptive easement. . . . [T]he ownership rights of Williamson and [the Grays] are subject to the rights of the general public to make use of the disputed parcel of real estate.

21. The [c]ourt concludes that [the McAllisters] and Zirkle have not acquired fee simple title to the disputed parcel of real estate by virtue of their adversely using said parcel of real estate. [ ].

\*     \*     \*

25. The [c]ourt concludes that [the McAllisters] and Zirkle have not acquired a prescriptive right to use the disputed parcel of real estate. [ ].

(Appellants' App. pp. 7–8).

The McAllisters and Zirkle now appeal. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

This cause comes before this court as an appeal from a grant of summary judgment. Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *First Farmers Bank & Trust Co. v. Whorley,* 891 N.E.2d 604, 607 (Ind. Ct.App.2008).

Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id.* at 607–08. In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id.* at 608. The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was proper. *Id.* When the defendant is the moving party, the defendant must show that the undisputed facts negate at least one element of the plaintiff's cause of action or that the defendant has a factually unchallenged affirmative defense that bars the plaintiff's claim. *Id.* Accordingly, the grant of summary judgment must be reversed if the record discloses an incorrect application of the law to the facts. *Id.* We review a summary judgment order *de novo. Tri–Etch, Inc. v. Cincinnati Ins. Co.,* 909 N.E.2d 997, 1001 (Ind.2009).

### II. *Common Law Dedication*

The McAllisters and Zirkle argue that the trial court erred when it determined that Sanders had dedicated the disputed alley to the public through common law dedication. Specifically, they contend that because the dedication of the disputed alley had not been adequately accepted by a public authority, title to the disputed alley must remain with Sanders and her heirs.

■■■ There are four requirements for statutory dedication: platting of the street, acknowledgement by the grantor, proper municipal approval, and recording. *Poznic v. Porter Cnty. Dev. Corp.,* 779 N.E.2d 1185, 1193 (Ind.Ct.App.2002). Because there was no statutory dedication in this case, there may be a common law dedication. Two elements are required for common law dedication: (1) the intent of the owner to dedicate and (2) the acceptance of the public of the dedication. *Sagarin v. City of Bloomington,* 932 N.E.2d 739, 747 (Ind.Ct.App.2010). Dedication may be express or implied, which arises by the acts of the owner. *Id.* "The intention must clearly appear, and the acts and declarations of the owner relied on to establish it must be clear, convincing, and unequivocal." *Id.* Evidence of a dedication includes the existence of the street shown by a public plat accompanied with use by the public as a street; is evidence of a parol dedication accompanied by public use; evidence of the owner selling lots on opposite sides of a strip suitable for a street and the public using the strip as such; or a taking by the lawful authority for public use. *North Snow Bay, Inc. v. Hamilton,* 657 N.E.2d 420, 423 (Ind.Ct.App.1995). Whether a plat contains an express dedication of a strip of ground to the public as a street is a matter of law for the courts. *Id.*

With respect to public use, we note that prior to 1988, I.C. § 8–20–1–15, which was relied upon by the trial court, provided, in pertinent part, that "[a]ll county highways heretofore laid out according to law, or used as such for twenty (20) years or more, shall continue as originally located and as of their original width, respectively,

until changed according to law." *Chaja v. Smith*, 755 N.E.2d 611, 614 (Ind.Ct.App. 2001). Despite the fact that the statute was amended in 1988 to remove the language "for twenty (20) years or more," we may still hold that the public accepted a street by usage if the street was used as a public street for twenty years prior to 1988. *Id.* Thus, the trial court was required to determine whether the public used the disputed alley for twenty years prior to 1988.

■ Under the first element, intention of the owner, the McAllisters and Zirkle cite to *North Snow Bay, Inc.*, 657 N.E.2d at 423, where we found that a parcel of real estate was not dedicated, but instead remained a private road. Specifically, we noted that the deed explicitly granted the purchasers an easement to access their land, while maintaining fee ownership in the grantor. *Id.* Unlike *North Snow Bay*, where the grantors made explicitly clear their intention of granting an easement, here, we find that Sanders made a parol dedication of the land based on the same reasons set forth by the trial court and shown by the designated evidence: (1) because each Lot touches upon Crooked Lake, there would have been no reason to make the dedication to the private owners of the Lots located within the Subdivision; and (2) Sanders used the word "alley" three separate times. We agree with the trial court that Sanders intended to make a dedication to the public based on the fact each Lot has its own access to the Lake and therefore it would have been unnecessary to include a designation to private owners.

Under the second element, acceptance of the public of the dedication, the McAllisters and Zirkle argue that other than the occasional use of the disputed alley by Williamson and the Grays, the disputed alley was used almost exclusively by the McAllisters and Zirkle and not the public. The trial court concluded that:

> [i]t is true that there were but few people who used the disputed parcel of real estate in the case at bar. However, the number of users is not critical to a court's determination of whether a public dedication of a parcel of real estate has been accepted through public usage.

(Appellants' App. p. 7). The trial court then cited to *Chaja*, which noted that:

> the frequency and number of users of a street is not significant, so long as the street remained free to those members of the public who had occasion to use it. In addition, the term 'public' has been interpreted to mean 'all those who have occasion to use' the road. Finally, a road can be a public road even if the road is only open at one end and only provides access to one landowner.

*Chaja*, 755 N.E.2d at 615 (internal citations omitted). The McAllisters and Zirkle designated the affidavit of William Etzler, who regularly spent time at his parents' lake cottage in the Subdivision, which stated that he did not observe either Williamson or the Grays "utilize the subject parcel other than occasionally walking across same, and otherwise utilizing the property as one customarily utilizes a neighboring property at a lake cottage." (Appellants' App. p. 118). However, based on *Chaja* and the designated evidence presented by the appellants, the disputed alley was used at some point by the appellees—however infrequent—and as such, the trial court did not err when it found that there was a common law dedication of the disputed alley.

### III. *Adverse Possession*

■ The McAllisters and Zirkle argue that the trial court erred when it granted Williamson and the Grays fee sim-

ple title in the disputed alley.[2] Specifically, they argue that they acquired title through adverse possession.[3] For a party to acquire property by adverse possession, they must establish the following elements: (1) control, (2) intent, (3) notice, and (4) duration.[4] *Bass v. Salyer*, 923 N.E.2d 961, 965 (Ind.Ct.App.2010). These elements must be satisfied for a period of ten years. *Roberts v. Feitz*, 933 N.E.2d 466, 479 (Ind. Ct.App.2010). In *Bass*, a case factually similar to this case, we held that because there had been a statutory dedication of a public easement to a disputed drive to access the lake from a county road, "[h]aving used the public easement for its intended purpose, to access the lake, the [appellee] cannot demonstrate that their use was at the same time under a claim of right, exclusive, hostile, or adverse to the fee simple title of the Lot Owners." *Bass*, 923 N.E.2d at 968. Similarly, because we determined that the disputed alley was dedicated to the public, the McAllisters and Zirkle cannot now argue that they have adversely possessed the alley to the exclusion of others.

## CONCLUSION

Based on the foregoing, we conclude that the trial court did not err when it found that Sanders intended to make a common law dedication of the disputed alley and that the McAllisters and Zirkle had not acquired fee simple title by adverse possession.

Affirmed.

KIRSCH, J., and BAILEY, J., concur.

---

**2.** The underlying assumption of the McAllisters and Zirkle is that because the attempted dedication of the streets and disputed alley was without statutory authority and was not adequately dedicated, title must remain with Sanders. Because we find that there was a common law dedication, we need not address this contention. Additionally, even if we were to address this issue, Williamson and the Grays clearly have fee simple title to the disputed alley, as "the ownership of the fee simple title to a lot abutting a street extends to the center of the street, subject only to the easement of the public for the use of the street." *Abbs v. Town of Syracuse*, 655 N.E.2d 114, 115 (Ind.Ct.App.1995).

**3.** The Appellants also advance the argument that they obtained a prescriptive easement in the disputed alley. However, because we determine that they have not demonstrated that they adversely possessed the disputed alley, we need not address whether they have obtained a prescriptive easement, as the analysis used for the adverse possession claim is also applicable to their prescriptive easement claim.

**4.** These four elements are established by clear and convincing proof of the following:

(1) Control–The claimant must exercise a degree of use and control over the parcel that is normal and customary considering the characteristics of the land (reflecting the former elements of "actual," and in some ways "exclusive," possession);
(2) Intent–The claimant must demonstrate intent to claim full ownership of the tract superior to the rights of all others, particularly the legal owner (reflecting the former elements of "claim of right," "exclusive," "hostile," and "adverse");
(3) Notice–The claimant's actions with respect to the land must be sufficient to give actual or constructive notice to the legal owner of the claimant's intent and exclusive control (reflecting the former "visible," "open," "notorious," and in some ways the "hostile," elements); and,
(4) Duration–the claimant must satisfy each of these elements continuously for the required period of time (reflecting the former "continuous" element).

*Bass*, 923 N.E.2d at 965 (citing *Fraley v. Minger*, 829 N.E.2d 476, 486 (Ind.2005)).