Mat WARREN, Betty Jo Ball, Individually and as Personal Representative of the Estate of Isabella Warren, Mary Collins, Martha Brewer, Mae Wilson and Lizzie Hartig, Appellants–Plaintiffs,

v.

E. Lee WARREN, Lilly Frayer, Ester Hensley and Arlie Warren, Appellees–Defendants.

No. 02A03–1102–PL–43.

Court of Appeals of Indiana.

July 26, 2011.

Mark E. Giaquinta, Melanie L. Farr, Haller & Colvin, P.C., Fort Wayne, IN, Attorneys for Appellants.

Denver C. Jordan, Kristen Steckbeck Bilinski, Blume, Connelly, Jordan, Stucky & Lauer, LLP, Fort Wayne, IN, Attorneys for Appellees.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellants–Plaintiffs, Matt Warren, Betty Jo Ball, Individually and as Personal Representative of the Estate of Isabella Warren, Mary Collins, Martha Brewer, Mae Wilson, and Lizzie Hartig (collectively, the Appellants), appeal the trial court's summary judgment and Order in favor of Appellees–Defendants, E. Lee Warren, Lilly Frayer, Ester Hensley, and Arlie Warren (collectively, the Appellees), finding that Appellees are entitled according to Ind.Code § 23–14–57–5 to pursue the disinterment and re-interment of their parents, Isabella (Isabella) and Sherman (Sherman) Warren.

We reverse.

### ISSUES

Appellants present two issues on appeal, which we consolidate and restate as the following single issue: Whether the issue of the disinterment and re-interment of Sherman and Isabella's remains pursuant to I.C. § 23–14–57–5 is *res judicata.*

### FACTS AND PROCEDURAL HISTORY

Appellants and Appellees are the children of Sherman and Isabella. At the time of the present declaratory judgment action, four of the children resided in Indiana, one resided in Michigan, three resided in Florida, one resided in Georgia, and one resided in Tennessee. None of the children resided in Kentucky.

Sherman died on September 4, 1970, while living in Indiana. He was buried in a cemetery in Barbourville, Kentucky, where Isabella also planned to be buried. However, following Sherman's death, Isabella lived with her youngest daughter, Irene Myers (Irene), in Allen County, Indiana. In 1998, Irene died and was buried in the IOOF Cemetery, in New Haven, Indiana. In late 2004 or early 2005, Isabella sought the disinterment of Sherman's remains in Kentucky. On April 18, 2005, the Cabinet for Health Services of the Commonwealth of Kentucky issued a permit authorizing the disinterment of Sherman's remains from the Barbourville Cemetery in Kentucky and, pursuant to permit, his remains were re-interred at the IOOF Cemetery in New Haven, Indiana, alongside his daughter, Irene.

On March 8, 2006, Appellees filed a "Complaint for Declaratory Judgment and to Set Aside Authorization for Disinterment of Remains of Sherman Warren," claiming that Isabella had suffered from advanced Alzheimer's and that her authorization for disinterment was wrongfully procured. (Appellant's App. p. 19). During the course of these proceedings, on October 17, 2007, Isabella died and was buried next to her husband and daughter in the IOOF Cemetery. On May 14, 2008, the trial court entered summary judgment in favor of Appellants and denied Appellees' request for declaratory judgment. Appellees appealed. On February 5, 2009, we issued an opinion affirming the trial court's summary judgment. *See Warren et al. v. IOOF Cemetery and Warren et al.,* 901 N.E.2d 615 (Ind.Ct.App.2009), *trans. denied* (*Warren I*). In *Warren I*, the Appellees

> respectfully move the [c]ourt to declare that the alleged authorization given by Isabella Warren on April 5, 2005, to disinter her husband's remains be set aside as invalid and illegal, order that the consent of Isabella Warren from the IOOF Cemetery located in New Haven, Allen County, Indiana, declare that the remains of Sherman Warren be transported to his burial plot at the Barbourville City Cemetery in Barbourville, Kentucky, where his remains should be re-interred, declare that the remains of Isabella Warren be interred next to those of her husband at the Barbourville City Cemetery in Barbourville, Kentucky as she directed when she was legally competent to do so, and grant [Appellees] all other just and proper relief in the premises.

*Id.* at 617.

After evaluating the pertinent Indiana Code sections 23–14–57–1 and 23–14–57–5, we concluded that

Here, the parties have disputed whether Isabella was able to freely and carefully consider the propriety of moving Sherman's remains from Kentucky in 2005. They do not, however, contest any fact relative to the present circumstances of interment. We assume, consistent with the [Appellees'] factual contentions, Isabella suffered from Alzheimer's during her later years and may not have been fully aware of the implications of some actions or decisions. Nevertheless, Isabella consistently expressed her desire to be buried beside her husband.

Sherman and Isabella are buried beside each other in a public cemetery. One particular location cannot be equally accessible to each of the eleven surviving children as they now live in diverse locations. However, there is no indication that any surviving child would be hampered in his or her efforts to visit the gravesites. The trial court found no justification for disinterment. We agree that the summary judgment record does not reveal any compelling reason to disinter the remains of two individuals, one of whom died over thirty-eight years ago. The trial court's exercise of its discretion was not contrary to the facts and circumstances before it.

*Id.* at 620.

Meanwhile, on November 21, 2007, approximately one month after Isabella's death, the Appellees filed an action alleging that Isabella's will is invalid and seeking to have her remains disinterred from her current resting place. In addition, they filed an application with the Indiana State Department of Health to disinter Isabella's remains. However, Appellants filed objections to such disinterment pursuant to I.C. § 23–14–57–1(b)(3). Accordingly, the State Board of Health refused to enter the order sought.

On August 25, 2008, Appellees filed a complaint in the Kentucky courts against the Kentucky Cabinet for Health Services and Appellants, pursuing the invalidation of its previously issued permit and the disinterment of Sherman's remains. On January 20, 2010, the Kentucky court dismissed the lawsuit.

On March 30, 2010, Appellants filed a complaint for declaratory judgment against Appellees seeking a declaration that the Appellees have no standing to seek the disinterment of Isabella's remains, and alternatively, if Appellees have standing, then there exists no basis for the removal of Isabella's remains. On May 27, 2010, the Appellees filed their answer. On July 28, 2010, Appellees filed their motion for summary judgment, to which the Appellants responded and filed a cross-motion for summary judgment. On December 9, 2010, the trial court conducted a hearing on both motions. On January 12, 2010, in a very detailed opinion, the trial court granted Appellees' motion for summary judgment and finding that "[t]here being no just reason for delay, the [c]ourt enter[ed] judgment in favor of [Appellees] ... and hereby determined that the [Appellees], pursuant to I.C. [§ ] 23–14–57–5, are entitled to pursue the disinterment and re-interment of Sherman Warren and Isabella Warren." (Appellants' App. p. 17). The trial court stated, in pertinent part, that

> [Appellees], pursuant to I.C. [§ ] 23–14–57–1(b), [have] submitted two Applications for Permit to Disinter, Remove and Reinter Human Remains to the Indiana State Board of Health, one for Sherman and the other for Isabella. Seven of the eleven Warren children have filed an objection with the Indiana State Health Department. Consequently, the state board of health has taken the position that it will not issue a per-mit for the reinterment unless ordered to do so by a court.

> \*     \*     \*

> Both [Appellees] and [Appellants] filed Motions for Summary Judgment on the issue of whether the [Appellees] may pursue the re-interment of Isabella, and Sherman pursuant to I.C. [§ ] 23–14–57–5(b).

> \*     \*     \*

> The issue in this matter is not so much one of standing as it is whether the [Appellees] are legally entitled to pursue re-interment of Isabella pursuant to Section 5. The [c]ourt finds that Section 1(b) does not preclude the [Appellees] from pursuing re-interment of Isabella pursuant to Section 5.

> \*     \*     \*

> Accordingly, the [c]ourt finds that pursuant to I.C. [§ ] 23–14–57–5(b), the [Appellees] are entitled to file a lawsuit seeking an order for the disinterment and the re-interment of the remains of Isabella and/or Sherman.

(Appellant's App. pp. 14–17).

Appellants now appeal. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. Standard of Review

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *First Farmers Bank & Trust Co. v. Whorley*, 891 N.E.2d 604, 607 (Ind. Ct.App.2008), *trans. denied.* Thus, on appeal, we must determine whether there is

a genuine issue of material fact and whether the trial court has correctly applied the law. *Id.* at 607–08. In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id.* at 608. The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *Id.* When the defendant is the moving party, the defendant must show that the undisputed facts negate at least one element of the plaintiff's cause of action or that the defendant has a factually unchallenged affirmative defense that bars the plaintiffs' claim. *Id.* Accordingly, the grant of summary judgment must be reversed if the record discloses an incorrect application of the law to the facts. *Id.*

We observe that in the present case, the trial court entered detailed and helpful findings of fact and conclusions of law in support of its judgment. Special findings are not required in summary judgment proceedings and are not binding on appeal. *Id.* However, such findings offer this court valuable insight into the trial court's rationale for its review and facilitate appellate review. *Id.*

## II. *Doctrine of Res Judicata*

Appellants initiated this current lawsuit by requesting a declaratory judgment that Appellees have no standing in accordance with I.C. § 23–14–57–5(b) to pursue the disinterment in Indiana of Isabella and re-interment of her remains in Kentucky. In its Order of January 12, 2011, the trial court not only granted summary judgment in favor of Appellees, awarding them standing in the suit but also, at the same time, entered judgment entitling Appellees to disinter and re-inter Sherman and Isabella. Appellants now note that the disinterment of Sherman's remains was never before the trial court and contend that, in any event, the trial court's summary judgment and order with respect to Sherman's remains is *res judicata* by *Warren I*. While we agree with Appellants, we decide that the trial court's summary judgment and order is not only *res judicata* for Sherman but also with respect to Isabella.

*Res Judicata* is an affirmative defense which prohibits a tribunal from considering an issue which has been litigated in a prior hearing. *Lake Monroe Regional Waste Dist. v. Waicukauski*, 501 N.E.2d 466, 469 (Ind.Ct.App.1986). The doctrine of *res judicata* has evolved as a matter of public policy. Fairness to the parties and economy of time are the cornerstones of this policy. *Id. Res judicata* has been considered over the years as a defense which must be affirmatively pleaded before the second tribunal. *Id. See* Ind. Trial Rule 8(C). While our review of the record and designated evidence establishes that the doctrine was not pled before the trial court, we nevertheless, conclude that *res judicata* was timely raised when the trial court's order exceeded the issues raised before it.

The doctrine of *res judicata* bars litigation of a claim after a final judgment has been rendered in a prior action involving the same claim between the same parties or their privies. *Small v. Centocor, Inc.*, 731 N.E.2d 22, 26 (Ind.Ct.App.2000). The following four requirements must be satisfied for a claim to be precluded under the doctrine of *res judicata:* 1) the former judgment must have been rendered by a court of competent jurisdiction; 2) the former judgment must have been rendered on the merits; 3) the matter now in issue was, or could have been, determined in the prior action; and 4) the controversy adjudicated in the former action must have been between the parties to the present suit or their privies. *Id.*

The only requirement challenged by Appellees is the fact that IOOF Cemetery was a party to *Warren I*, while the cemetery is not involved in the present suit. As such, Appellees maintain that the same party requirement is not satisfied. *Warren I* noted in its case summary

> Four of the surviving children of [Sherman] and [Isabella], [Appellees] brought an action challenging a 2005 disinterment of Sherman's remains, naming as defendants their siblings [Appellants], IOOF Cemetery. David C. Van Gilder, as guardian of Isabella, and the Indiana State Department of Health.

*Warren I*, 901 N.E.2d at 616. We find it of no importance that IOOF Cemetery is not a party in the instant case; the same party requirement of *res judicata* does not propone exclusivity, it merely requires that the parties in the second suit were also present in the first suit. It is undeniable that Appellees were directly interested in the subject matter and controlled the proceedings in Warren I. *See MicroVote General Corp. v. Indiana Election Com'n*, 924 N.E.2d 184, 196 (Ind.Ct.App.2010). Therefore, we find that the same party requirement is satisfied.

Turning to the remaining *res judicata* requirements, we note that *Warren I* was rendered by this court, with transfer denied by our supreme court, and was a judgment issued on its merits. Next, we analyze whether the matter now in issue was, or could have been, determined in the prior action. *Warren I* was initiated by the Appellees by filing a "Complaint for Declaratory Judgment and to Set Aside Authorization for Disinterment of Remains of Sherman Warren." *Warren I*, 901 N.E.2d at 617. More specifically, Appellees

> respectfully move the [c]ourt to declare that the alleged authorization given by Isabella Warren on April 5, 2005, to disinter her husband's remains be set aside as invalid and illegal, order that the consent of Isabella Warren from the IOOF Cemetery located in New Haven, Allen County, Indiana, declare that the remains of Sherman Warren be transported to his burial plot at the Barbourville City Cemetery in Barbourville, Kentucky, where his remains should be re-interred, declare that the remains of Isabella Warren be interred next to those of her husband at the Barbourville City Cemetery in Barbourville, Kentucky as she directed when she was legally competent to do so, and grant [Appellees] all other just and proper relief in the premises.

*Id.* However, in its analysis, the *Warren I* court honed in on the real issue presented:

> [Appellees] conceded that the crux of their claims, and the disposition that they ultimately seek, is not a declaration of the invalidity of the Kentucky permit, but rather the disinterment of their parents' remains in Indiana and re-interment in Kentucky.

*Id.* at 618. In its analysis, the *Warren I* court interpreted both code sections at issue in the current case—I.C. §§ 23–14–57–1 and 23–14–57–5—to conclude that "the summary judgment record does not reveal any compelling reason to disinter the remains of *two individuals,* one of whom died over thirty-eight years ago." *Id.* at 620.

In the current case, the trial court was called upon to declare that Appellees no longer had any standing to request the disinterment of Isabella's remains. In its Order, the trial court decided that Appellees had standing and entered judgment, finding that Appellees "pursuant to I.C [§ ] 23–14–57–5, are entitled to pursue the disinterment and reinterment of *Sherman Warren and Isabella Warren.*" (Appellant's App. p. 17)(emphasis added). In its

evaluation of Appellants' claim, the trial court interpreted the identical two provisions analyzed in *Warren I*—I.C. §§ 23–14–57–1 and 23–14–57–5—but reached the opposite result.

Based on this side-by-side comparison between *Warren I* and the trial court's judgment in the instant case, it is clear that the same issue was decided by both courts, *i.e.,* the disinterment in Indiana of Sherman and Isabella and the re-interment of both individuals' remains in Kentucky. Therefore, we find the issue to be *res judicata* and no longer available for our review. At the same time, we want to request the Warren family to cease this continuous litigation. Not only is it ripping the family apart, it drains financial resources which might be better spent elsewhere. We empathize with both sides of the Warren family whose sole intention is to fulfill the final wish of their deceased parents; however, the reality is that Sherman and Isabella are buried beside each other in a public cemetery and are together with their deceased daughter. Let them rest in peace.

### CONCLUSION

Based on the foregoing, we conclude that the issues before us are *res judicata* and not available for our review.

Reversed.

DARDEN, J., and BARNES, J., concur.