**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**F. HARRISON GREEN**
Cincinnati, Ohio

ATTORNEY FOR APPELLEE:

**MICHAEL R. MOROW**
Stephenson Morow & Semler
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MARVIN SMITH, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 89A01-1202-CT-45 |
| | ) | |
| CITY OF RICHMOND and CITY OF RICHMOND PUBLIC WORKS, | ) | |
| | ) | |
| Appellees-Defendants. | ) | |

APPEAL FROM THE WAYNE CIRCUIT COURT
The Honorable David A. Kolger, Judge
Cause No. 89C01-1004-CT-6

**September 28, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Plaintiff, Marvin Smith (Smith), appeals the trial court's grant of summary judgment in favor of Appellee-Defendant, City of Richmond, Indiana (the City) with respect to Smith's tort claim.[1]

We affirm.

## ISSUES

Smith raises two issues on appeal, which we restate as follows:

(1) Whether the trial court erred in finding that Smith's claim was barred by the notice requirements of Ind. Code §§ 34-13-3-8, -10; and

(2) Whether the trial court erred in finding that the City of Richmond had a prescriptive easement on Smith's property.

## FACTS AND PROCEDURAL HISTORY

On September 14, 2005, Smith bought property on Fifth Street in Richmond, Indiana (the Property). A combination storm and sanitary sewer line opens on the Property, and the water from the line runs over the Property and down into a gorge. Ultimately, it reaches a point in the east fork of the Whitewater River, below Smith's property. Prior to buying the Property, Smith did not survey the Property, and the deed did not indicate the existence of an easement.

---

[1] Smith's complaint also listed the City of Richmond Public Works (Public Works) as a defendant, but the trial court found in its order granting summary judgment that the Public Works was not a governmental entity subject to suit, and Smith does not dispute this conclusion on appeal.

In approximately 2004, before Smith's purchase of the Property, the United States Environmental Protection Agency ordered the City to make improvements to the Property to substantially reduce the outflow of the water and sewage from the sewer line into the river. The City of Richmond Public Works (Public Works) determined that a 10,000 gallon holding tank needed to be installed, as well as a filter to reduce the odor from the overflow port. On November 9, 2005, after Smith's purchase, the Public Works Engineer, Robert Wiwi (Wiwi) met with Smith and outlined the proposed project. Smith told the City that it did not have an easement on his property to make the proposed improvements. On December 12, 2005, Wiwi met with Smith again and suggested that Smith prepare a proposal outlining his terms for allowing the City an easement on his property. As per the request, on January 30, 2006, Smith informed the City that he would provide the City with easement rights to the Property in exchange for $50,000 and the City's fulfillment of some other conditions such as constructing a fence around the Property, paying for survey fees, and reimbursing him for his resulting business losses.

After Wiwi received Smith's letter, the City and the Public Works researched the history of the Property and determined that the City had rights to a prescriptive easement lying under 15 feet of the Property and 15 feet of the adjacent property, otherwise known as Lot 13. This conclusion was based on their findings that in 1905, Richmond had a right-of-way over the Property called the continuation of South-H Street. In the 1930's, the City installed the original sewer pipe under the center line of that pre-existing right-of-way. Since that time, the sewer line had been in operation by the City continuously

3

and uninterruptedly, as had the sewer's output point into the east fork of the Whitewater River. While the easement was not documented on the title for Smith's property, it was described in a document related to Lot 13. This document illustrated a 30-foot wide easement, of which 15 feet was on the Property and 15 feet was on Lot 13.

As a result of these findings, on March 29, 2006, the City wrote Smith a letter informing him that it had a prescriptive easement for the storm and sanitary sewer pipes on the Property and that it would begin excavation on April 3, 2006. The letter also informed Smith that the City would not pay him any money for the work done on the Property. On April 5, 2006, Smith responded, informing the City that he believed that the proposed improvements involved significant changes outside the scope of the existing easement and that he had concerns about the nuisance "value" of the improvements. (Appellant's App. p. 134). Smith requested that the City pay him $12,000 for the right to the "additional easements." (Appellant's App. p. 134). On April 10, 2006, the City responded, stating that the new system was within the boundaries of the existing easement according to professional surveys reviewed by Wiwi and that there would not be a nuisance value to the improvements.

The construction work on the Property began after April 3, 2006, and was completed in November of 2007. Wiwi supervised the work and checked the boundary lines of the new construction, ultimately determining that the improvements were entirely within the boundaries of the pre-existing prescriptive easement.

4

In May of 2008, Smith received a notice of exception to his casualty insurance policy, in which his insurance company stated that it would not insure the Property as to easements not shown of record. In December of the same year, Smith went to the Wayne County Recorder's Office and found an abstract of title for the Property, dated August 29, 1950, with a continuation of the abstract of title through June 26, 1968. This abstract of title did not mention the City's easement.

On April 20, 2009, Smith sent the City a letter titled "Tort Claim Notice," in which he alleged that the City had encroached on his property for a period of more than two years without an easement, thereby causing damages in an amount totaling more than $50,000. On April 24, 2009, Smith sent a revised letter identical to his April 20 letter, amending the address listed in the letter to reflect the correct address for the Property. The City did not respond and almost one year later, on April 15, 2010, Smith filed a complaint seeking damages under theories of trespass, negligence, nuisance, and a duty to warn.

On April 5, 2011, the City and the Public Works filed a motion for summary judgment under Indiana Trial Rule 56, citing Smith's failure to file a timely tort claim notice as required by I.C. §§ 34-13-3-8, -10. The City also raised an affirmative defense that it had the right to a prescriptive easement on the Property as a matter of law. On December 6, 2011, the trial court heard arguments on the motion. On January 4, 2012, the trial court granted summary judgment to the City and the Public Works, finding that

all claims were barred by Smith's failure to timely file a tort claim notice and the City's right to a prescriptive easement on the Property.

Smith now appeals. Additional facts will be provided as necessary.

<u>DISCUSSION AND DECISION</u>

Pursuant to Ind. T.R. 56(C), summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *Warren v. Warren,* 952 N.E.2d 269, 269 (Ind. Ct. App. 2011). Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id.* In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id.* The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *Id.* When the defendant is the moving party, the defendant must show that the undisputed facts negate at least one element of the plaintiff's cause of action or that the defendant has a factually unchallenged affirmative defense that bars the plaintiff's claim. *Id.* Accordingly, the grant of summary judgment must be reversed if the record discloses an incorrect application of the law to the facts. *Id.*

I. *Tort Claim Notice*

First, Smith disputes the trial court's conclusion that he did not file a timely tort claim notice. Pursuant to I.C. § 34-13-3-8, a claim against a political subdivision is barred unless notice of that claim is filed "within [180] days after the loss occurs." This notice must "describe in a short and plain statement the facts on which the claim is based[,] [] the circumstances which brought about the loss, the extent of the loss, the time and place the loss occurred, the names of all persons involved if known, the amount of damages sought, and the residence of the person making the claim at the time of the loss and at the time of filing the notice." I.C. § 34-13-3-10. Its purpose is to provide an opportunity for the political subdivision to investigate, determine liability, and prepare a defense to the tort claim. *Orem v. Ivy Tech. State College,* 711 N.E.2d 864, 869 (Ind. Ct. App. 1999), *trans. denied.* Whether a party has complied with the notice requirement is a question of law to be determined by the court. *Id.*

Smith argues that he provided the City with notice of his claim because he voiced his complaints about the project at multiple points. Specifically, he cites his meeting with Wiwi in January 2006; his proposal to sell the City rights to an easement on the Property for $50,000; his April 5, 2006 letter informing the City that he thought its proposed improvements exceeded the scope of its easement; and his letter to the City in 2008 informing the City that his insurance would not insure his property as to easements not shown of record. Finally, he also argues that he served his formal tort claim notice on the City within 180 days of discovering the title abstract to the Property, which provided that there were no easements of record by the City on the Property through 1968. In response,

7

the City argues that none of these complaints complied with I.C. § 34-13-3-8 because they did not provide the City with notice of Smith's intent to file a claim, and they were not served on the City's proper representative—the City Council.

In order to evaluate Smith's argument, we must first determine when his "loss occur[red]." *See* I.C. § 34-13-3-8. We have previously held that a loss occurs for the purpose of triggering the 180-day notice of claim period when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered, that an injury had been sustained as a result of the tortious act of another. *Reed v. City of Evansville,* 956 N.E.2d 684, 691 (Ind. Ct. App. 2011), *trans denied.* Our supreme court has clarified that a claim subject to the discovery rule accrues when a plaintiff is informed of a "reasonable possibility, if not probability" that an injury was sustained as a result of the tortious act of another, and that a person's "mere suspicion or speculation" as to causation of an injury is insufficient to trigger accrual. *Id.* (quoting *Degussa Corp. v. Mullens,* 744 N.E.2d 407, 411 (Ind. 2011)).

In his complaint, Smith argued that: (1) the City and Public Works' construction of an electrical transmission tower on the Property constituted trespass; (2) the City and Public Works were negligent in constructing the holding tank and sewer lines, and Smith incurred damages as a result of noxious materials; (3) the City and Public Works negligently created a safety hazard on the Property during its construction of the holding tank and sewer lines; and (4) the City and Public Works failed to warn Smith and his business invitees and guests of the dangerous conditions on the Property as a result of

8

raw sewage. Each of these claims stems from the City's construction on Smith's property. As a result, we conclude that, at a minimum, Smith knew or should have known of his loss by the time that the construction on his property drew to a close in November of 2007.

Instead, Smith requests that we consider the loss to his property a "continuing wrong." The doctrine of continuing wrong applies where an entire course of conduct combines to produce an injury. *Gradus-Pizlo v. Acton,* 964 N.E.2d 865, 871 (Ind. Ct. App. 2012). When this doctrine attaches, the statutory limitations period begins to run at the end of the continuing wrongful act. *Id.* In order to apply the doctrine, the plaintiff must demonstrate that the alleged injury-producing conduct was of a continuous nature. *Id.* However, "the doctrine of continuing wrong will not prevent the statute of limitations from beginning to run when the plaintiff learns of facts which should lead to the discovery of his cause of action even if his relationship with the tortfeasor continues beyond that point." *Fox v. Rice,* 936 N.E.2d 316, 322 (Ind. Ct. App. 2010), *trans. denied* (quoting *C & E Corp. v. Ramco Indus., Inc.,* 717 N.E.2d 642, 645 (Ind. Ct. App. 1999)).

Although Smith's relationship with the City—and the City's improvements to the Property—continued past the completion of the construction on the Property, we conclude that Smith did not suffer from a continuing wrong. Instead, Smith's complaints to the City indicate that he did, in fact, know that he had suffered a loss. It is clear that Smith had discovered that he had a cause of action prior to the completion of the

construction and, thus, had 180 days from that point to provide the City with notice of his claim under I.C. § 34-13-3-8.[2]

Mindful of this conclusion, we now turn to whether Smith's numerous complaints to the City constituted "notice" of his tort claim within 180 days of the completion of the construction on the Property. As Smith argues, we have held that the notice requirement of I.C. § 34-13-3-8 should be liberally applied in order to avoid denying plaintiffs an opportunity to bring a claim where the purpose of the statute has been satisfied. *Brown v. Alexander,* 876 N.E.2d 376, 381 (Ind. Ct. App. 2007), *trans. denied.* As such, not all technical violations of the statute are fatal to a claim. *Id.* Non-compliance has been excused in certain cases based on the theory of substantial compliance. *Id.* The theory of substantial compliance focuses on the nature of the notice itself, and is concerned with the extent to which the form, content, and timing of the notice complies with the requirements of the notice statute. *Id.* As a general rule, an evaluation of substantial compliance looks not to the information held by the governmental entity but instead to the efforts made by the claimant to notify the governmental entity of the claim. *Id.* It allows an action to proceed when a claimant has attempted to provide notice, has fallen short of the strictures of the statute, and yet has supplied the appropriate governmental entity with sufficient information to investigate the claim. *Id.* However, in order to

---

[2] As a second alternative, Smith also implies that we should toll the 180 day notice period under the doctrine of fraudulent concealment. However, Smith has not clarified how the City's statement that it had a prescriptive easement on the Property constituted fraudulent concealment. Accordingly, we will not address this issue any further.

constitute substantial compliance, the notice must not only inform the political subdivision of the facts and circumstances of the alleged injury but must also advise of the injured party's intent to assert a tort claim. *Bienz v. Bloom,* 674 N.E.2d 998, 1005 (Ind. Ct. App. 1996), *trans. denied.*

The only evidence we have here of Smith's intention to file a tort claim was his April 24, 2009 "Notice of Tort Claim" letter to the City in which he informed the City that he intended to file a tort claim. Although Smith complained to the City at other times, he never indicated that he intended to file a claim as required for substantial compliance. *See id.* Although it could be argued that Smith's April 24 letter informed the City of his intent, the letter did not satisfy the notice requirement because it was sent more than 180 days past the completion of the construction on the Property. Accordingly, we conclude that Smith did not provide the City with adequate notice and, as a result, the trial court did not err when it granted the City summary judgment under I.C. § 34-13-3-8.

## II. *Prescriptive Easement*

Next, we turn to the issue of whether the trial court erred when it granted summary judgment in favor of the City on the ground that the City had a prescriptive easement on the Property. The four elements required to establish a prescriptive easement are control, intent, notice, and duration. *Sagarin v. City of Bloomington,* 932 N.E.2d 739, 747 (Ind. Ct. App. 2010), *trans. denied, cert denied,* 132 S.Ct. 117 (2011). The elements of intent and duration will be satisfied where the party claiming a prescriptive easement has used

the land in an adverse manner to the rightful owner who had knowledge of the use and was acquiescent for at least twenty uninterrupted years. *Id.* Notice may be actual or constructive notice of the claimant's intent and exclusive control of the property. *McAllister v. Sanders,* 937 N.E.2d 378, 385 (Ind. Ct. App. 2010). It is the general rule that where there has been use of an easement for twenty years that is unexplained, the presumption is that it is under a claim of right, and adverse, and is sufficient to establish title by prescription unless such use is contradicted or explained. *Capps v. Abbott,* 897 N.E.2d 984, 988 (Ind. Ct. App. 2008).

Here, the City produced evidence supporting each element establishing a prescriptive easement. It is undisputed that the original sewer line was constructed in the 1930's, as was documented by the Public Works. This is beyond the 20 years required to establish a prescriptive easement. Further, it is undisputed that the City has controlled the sewer line exclusively throughout that time under a claim of right and that its operation has been uninterrupted. Finally, the City provided evidence that the end of the sewer line opened on the Property, above ground, which provided Smith with notice of the line's existence. Smith admitted that this opening was visible and that even prior to the improvements he knew about the line because it had an odor.

The only evidence Smith produced to dispute the existence of a prescriptive easement was the title abstract, which provided that there were no documented easements on the Property through 1968. However, the abstract does not contradict the City's evidence because more than twenty years has passed since 1968. Even if we were to

12

assume that the City did not have a prescriptive easement in 1968, it is possible that it has gained rights to one now through adverse use since that time. Accordingly, we conclude that Smith did not produce any evidence contradicting the establishment of the City's prescriptive easement. Thus, we find that there is no genuine issue of material fact and the trial court did not err in granting the City summary judgment.

## CONCLUSION

Based on the foregoing, we conclude that the trial court did not err in finding that (1) Smith's claim was barred by the notice requirements of I.C. §§ 34-13-3-8, -10; and (2) the City had a prescriptive easement on the Property.

Affirmed.

BAILEY, J. and CRONE, J. concur