HUNT ET UX. *v.* ZIMMERMAN ET UX.

[No. 20,191. Filed June 3, 1966. Rehearing denied July 28, 1966.]

*Clyde P. Miller*, of Indianapolis, for appellants.

*Richard M. Givan* and *Bowen, Myers, Northam & Givan*, of Indianapolis, for appellees.

BIERLY, J.—This action was brought in the court below by appellees (Plaintiffs below) to obtain an injunction enjoining the appellants (Defendants below) from blocking a driveway with a gate or throwing rubbish into said driveway, or in any way interfering with the appellees' use of said driveway.

Appellees allege in their complaint that said driveway is a way of necessity from the public alley to the back of their property, and that there is no other feasible method of getting from the public highway to the back of said property.

The court below found for the appellees and issued an injunction. From this judgment the appellant appeals, assigning as error the court below erred in overruling his motion for a new trial. The grounds stated therein is that the verdict was not sustained by sufficient evidence and was contrary to law.

The evidence discloses that appellants and appellees owned adjoining plots of real estate with improvements thereon; that appellants' Plot No. 1, is forty-six feet (46') in width, and has for its south boundary line an alley; that appellees' Plot No. 2, lies adjoining appellants' Plot No. 1, on the north and has a width of thirty-nine and seven tenths feet (39 7/10'). Both properties front on LaSalle Street. The southern plot is bounded on the south by a twelve (12) foot alley running east and west terminating on the east at La-Salle Street. Both properties had very small back yards, and in the appellees' (Plaintiffs') back yard there was located a

small garage, with the doors opening to the south, thereby making it mandatory to cross over appellants' (Defendants') back yard in order to use the garage for parking an automobile.

The evidence also indicates that both plots in question, in addition to some surrounding areas, were all previously owned by one Harry Borst, who had constructed and used the garage on Plot No. 2, for parking some time before his death in 1941. After his death, the trustees under his will, sold and transferred by warranty deed the south Plot No. 1, to one Smith in 1947, but no access or right of easement for the use of the garage was provided; and then, in 1948, it passed by sale to R. W. Hunt, who died leaving it to the appellants. In 1951, the appellees purchased Plot No. 2 from the trustee.

Between the time of Harry Borst's death in 1941, and the time this suit was instituted, the garage had been used for parking, only by the appellant, who had rented it from Mrs. Borst about three months after the appellants had moved there. When the appellees moved into the residence on Plot No. 2, appellants unsuccessfully negotiated for rental of the garage from them. Shortly thereafter, the appellees began parking their automobile in the garage, using appellants' back yard as a driveway.

The question presented for determination is whether a way by necessity existed for appellees to use appellants' back yard as a driveway for ingress and egress to and from the garage.

There seemed to be some confusion on the trial level among the parties involved as to the concept of an implied easement by way of necessity. An early expression of this concept is found in *Anderson* v. *Buchanan* (1856), 8 Ind. 132, p. 133, where the court quoted from 3 Kent, pp. 420, 424, which says:

"Thus, if a man sells land to another which is wholly surrounded by his own land, in this case the purchaser is en-

titled to a right of way over the other's ground to arrive at his own land."

The court in its own words then added, *"But necessity, not convenience, is the foundation of the right."* (Our Emphasis.)

There seemed to be some disagreement in Indiana, for a time, as to whether it is a question of strict necessity or one of only reasonable necessity. See *Dudgeon* v. *Bronson* (1909), 159 Ind. 562, 564, 64 N. E. 910; and *Shandy* v. *Bell* (1934), 207 Ind. 215, 222, 189 N. E. 627. In *Shandy* v. *Bell, supra,* the court in discussing what a reasonable necessity would require at Page 223, said:

"It is, however, the universal rule, in our judgment, that a reasonable necessity must be something more than convenient or beneficial. A mere convenience is not sufficient to create or convey a right or easement, or impose burdens on lands other than those granted, as incident to the grant. And a way of reasonable necessity must be more than convenient and beneficial, *for if the owner of the land can use another way, he can not claim by implication the right to pass over that of another to get to his own."* (Emphasis supplied).

However, in the case at bar, we need not concern ourselves with the question of strict versus reasonable necessity. The question presented for our determination is whether a necessity, if any, exists. We contend that the answer can be determined by looking to the case of *Ritchey et al.* v. *Welsh* (1898), 149 Ind. 214, 217, 48 N. E. 1031, where the court in speaking of right of ways by necessity stated:

"It is settled law that if one conveys a part of his land in such form as to deprive himself of access to the remainder, unless he goes across the land sold, he has a way of necessity over the portion conveyed. This is because the law presumes an understanding of the parties that the one selling a portion of his land shall have a legal right of access over the part sold to the remainder, *if he cannot reach it in any other way.* If the [the sic] part conveyed is in such form that the grantee cannot reach the same except over the

part not conveyed, such grantee has a way of necessity thereto over the land of the grantor, not conveyed, for the reason that the law presumes that one would not sell his land to another without an understanding that the grantee should have a legal right of access thereto over the part not conveyed." (Emphasis supplied).

It is a well reasoned rule that for a necessity to exist, there must be no other means of ingress and egress to the property in question. A right of way by necessity cannot apply to property which is already accessible to the landowner. To hold otherwise would be to hold that a right of way by necessity is determined by convenience or benefit to the land owner, and this would be clearly erroneous. See *Shandy* v. *Bell, supra.* Thus, in the case at hand, the appellee already had a method of ingress and egress, for his property fronted on LaSalle Street. It may be true that he had no ingress or egress for the use of his garage in the manner for which it had been designed, but this is not our concern. We are concerned only with the land as a whole, and not as to the use of a particular building located on the land.

We are of the opinion that the judgment of the trial court should be reversed and said injunction dissolved.

Judgment reversed and the trial court directed to dissolve said injunction and free appellants from liability on the bond.

Hunter, J., and Mote, J., concur. Smith, C. J., concurs in result.

ON PETITION FOR REHEARING.

BIERLY, J.—Appellees in their brief in support of their petition for rehearing, contend that, "when a remote grantor conveys his land, cutting part of it off from an available highway, the law will impose a way of necessity for ingress and egress in the absence of a reservation in the conveyance."

This contention is in accord with our opinion, assuming that the word "part" is referring to the land retained by the grantor and is inaccessible by any highway. So, in the case at

bar, had only that portion of land under the garage been conveyed, there would not have existed access to the land for it would have been completely landlocked. In a case such as this, the law would impose a way of necessity of ingress and egress to the land. But since this was not the case, there can be no way of necessity imposed.

Appellees cite the case of *New York Central R. Co.* v. *Yarian* (1942), 219 Ind. 477, 483, 39 N. E. 2d 604, for the proposition, ". . . that the way may be used in any manner that is reasonably required for the complete and beneficial use of the dominant estate as a farm or home." Appellee, however, fails to see the distinction between the case at bar and the case cited above. The case cited above deals with an express reservation of an easement in a conveyance in which the court was called upon to determine the extent of the easement, because the parties had not placed any limitations upon it. This case is annotated in 139 A. L. R. 455, and deals sufficiently with this point. This differs, of course, from the case at bar in that there was no reservation of an easement, and this court was called upon to determine the correctness of the ruling of the court below that an easement existed by way of necessity.

Appellees' approach to the situation in the case at bar suggests that an easement was already established. They state in their brief:

"The easement in question was established for the purpose of driving an automobile from the public streets into a garage constructed for the purpose of housing an automobile at the rear of the home now owned by appellees."

They go on to say:

"Such use is a use which is reasonably required for the complete and beneficial use of the garage located at the rear of appellees' home, the use of which in turn is reasonably calculated for the complete and beneficial use of appellees' home."

If an easement were already established, the necessity of this appeal would be non-existent.

The appellees contend in their complaint:

". . . that said driveway is a necessary easement from the public alley to the back of their property and that there is no other reasonable or feasible method of getting from the public highway to the back of said property;"

The establishment of an easement by way of necessity is but one method of establishing an implied easement. Oftentimes, it is given the greatest weight in determining if an implied easement exists. To quote from the Restatement, Property § 476 (g) (1944):

"If *no* use can be made of *land* conveyed or retained without the benefit of an easement, it is assumed that the parties intended the easement to be created. . . . It is assumed that the parties could not have intended that the land retained by the conveyor should be useless in his hands. . . . The inference as to the intention which is made is influenced largely by considerations of public policy in favor of land utilization." (Emphasis added.)

Appellees also cite *Shandy* v. *Bell* (1934), 207 Ind. 215, 189 N. E. 627, as authority for their position. This case was cited in our opinion, and we definitely feel our opinion is consistent with this case. Indeed, we could have even adopted Judge Hughes' language on p. 223, wherein he states:

"Applying the law, as we have found it to be in this state, to the facts found by the lower court, what must the result necessarily be? The court found that the driveway in question was *convenient* and *beneficial* for the fair enjoyment of the dwelling house of appellant, but it did not find that it was reasonably necessary. And, as we have heretofore stated, the fact that the driveway may have been convenient and beneficial would not establish, under the law, an easement thereto."

Similarly, in the case at bar, appellees stress that the easement is reasonably required for the complete and beneficial use of the garage, and of the full and fair enjoyment of the dominant estate. This court is firmly of the opinion that this

is a matter of convenience and benefit only, and not one of necessity.

Appellees' final citation of authority is the case of *State ex rel. McNutt* v. *Orcutt* (1936), 211 Ind. 523, 527, 199 N. E. 595. However, that case differs from the case at bar in that:

"The private way in question was in use when all of the tracts of land here involved were in the possession of a common owner, and was then, and has continued to be, *the only means of reaching the public highway* from the interior . . . there was an obvious servitude . . . to the extent of the use of the way as a means of communication with the public highway." (Our emphasis.)

For the foregoing reasons, we are of the opinion that the Petition for a Rehearing should be denied.

In addition to the alleged errors recited in the Petition for Rehearing, and comments thereon in the Supporting Brief, appellees discuss some practical aspects of the opinion of this court in its denial of a driveway easement across appellants' lot in favor of appellees.

We note in appellees' supporting brief this quotation from our opinion as follows:

"A right of way by necessity cannot apply to property which is already accessible to the landowner."

Appellees follow this quotation with the following passage, to-wit:

"It is true that the back yard and the garage therein is accessible to the appellees *by leaving La Salle Street and walking along the side[1] of their house and into the back yard, or by leaving La Salle Street, entering their front door and entering the back yard via the back door,* however, such accessibility is not that which is contemplated in the cases which have established Indiana as a leading state of authorities for the proposition that when a remote grantor conveys his land, cutting part of it off from an available highway, the law will impose a way of necessity for ingress

---

1. Presumably the northside.

and egress in the absence of a reservation in the conveyance." (Emphasis supplied.)

We note further in appellees' supporting brief as follows:

"It is not sufficient that the appellees in the case at bar can physically walk into their back yard from the public road[2] without using the easement in question. The easement in question was established for the purpose of driving an automobile from the public streets[3] into a garage constructed for the purpose of housing an automobile at the rear of the home now owned by appellees."

We are not aware, and the record does not disclose by any testimony which supports the statement of appellees that they may reach the back yard by "leaving La Salle Street, entering their front door and entering the back yard via the back door." We are prone to believe that appellees in this quotation assumed "poetic license" rather than legal rhetoric and sojourned in journalistic perambulations.

The record specifically reveals that appellants' immediate grantors purchased the south Lot No. 1, from the trustee of the estate of Harry Borst, deceased, in 1947; that appellants bought said Lot No. 1, from the Smiths in 1948; that in 1951 appellees purchased the north Lot No. 2, from said trustee. Testimony by Mrs. Katherine M. Zimmerman, appellee, elicited the information that a six foot strip of yard extended from the north side of appellees' house to a three car forty foot garage, which had been built and used by Harry Borst until his death. Mrs. Zimmerman further testified, and no one refuted the testimony, that this three car forty foot garage encroached one and one-half ($1\frac{1}{2}'$) feet south over the north line of appellees' Lot No. 2. From this testimony, we must assume the actual width of appellees' land north of their house to be seven and one-half ($7\frac{1}{2}'$) feet. Surely, no liability can be attached to appellants for the building of this three car garage partly on appellees' land.

2. Presumably LaSalle Street.
3. Presumably an alley.

Testimony was further given at the trial that at no time during the sale and transfer of titles to these lots did the matter of an easement for a driveway across the west end of appellees' Lot No. 1 ever arise. None of the conveyances of title to either Lot No. 1, nor Lot No. 2, noted an easement, either expressed or implied, as affecting appellants' real estate. The abstract of title to the real estate under discussion failed to show an easement as an encumbrance on either property, and the plat introduced as evidence, and embracing said lots, likewise failed to disclose an easement for a driveway on or over said lots or either of them.

It appears that appellees probably purchased said Lot No. 2, without a survey to determine boundary lines, location of buildings, and the encroachment of the three car garage, and if so, the failure to have such survey rests on appellees alone.

From the record the evidence produced shows that Harry Borst built the Double on Lot No. 1, and the west side of said double was approximately ten or twelve feet from the property line. Is it rational to assume that Mr. Borst recognized an easement in this limited space for an automobile driveway, which if established, would have taken up practically all the back yard? We think not.

We are unable to lend our approval to the establishment of this easement by judicial decree, since no reservations were contained in any of the conveyances, since the evidence failed to establish the existence of an easement, and because of the reasons set forth in the early part of this opinion.

Petition for Rehearing Denied.

Smith, C. J., concurs and Hunter and Mote, JJ., concur.

NOTE.—Reported in 216 N. E. 2d 854. Rehearing denied in 218 N. E. 2d 709.