**INDIANA REGIONAL RECYCLING, INC., Appellant–Plaintiff,**

v.

**BELMONT INDUSTRIAL, INC., Appellee–Defendant.**

No. 49A02–1103–PL–263.

Court of Appeals of Indiana.

Dec. 6, 2011.

William S. Ayres, Thomas B. Bricker, Ayres Carr & Sullivan, Indianapolis, IN, Attorneys for Appellant.

Frank D. Otte, Jennifer F. Perry, Clark Quinn Moses, Scott & Grahn, Indianapolis, IN, Tammy L. Ortman, Mercer Belanger, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

RILEY, Judge.

*STATEMENT OF THE CASE*

Appellant–Plaintiff, Indiana Regional Recycling, Inc. (Indiana Regional), appeals the trial court's summary judgment in favor of Appellee–Defendant, Belmont Industrial, Inc. (Belmont), with respect to Indiana Regional's claims that it had an

easement from prior use or necessity on Belmont's property, and that Belmont had committed tortious interference with Indiana Regional's contract with its tenant.

We reverse and remand for further proceedings.

*ISSUES*

Indiana Regional raises five issues on appeal, three of which we find dispositive and which we consolidate and restate as the following two issues:

(1) Whether the trial court erred in granting Belmont's cross-motion for partial summary judgment and motion for summary judgment based on its findings that Indiana Regional did not have an easement on Belmont's property implied from prior use or by necessity; and

(2) Whether the trial court erred in granting Belmont's motion for summary judgment based on its finding that Belmont did not commit tortious interference with Indiana Regional's contract with its tenant.[1]

*FACTS AND PROCEDURAL HISTORY*

Indiana Regional and Belmont own adjoining parcels of real estate referred to as Parcel I, Parcel II, and Parcel III, which have a common address in Indianapolis, Indiana. Belmont owns Parcels I and III, and Indiana Regional owns Parcel II. Parcel II is bordered on one side by Parcel I and is otherwise bordered on three sides by railroad tracks. A public road borders Parcel I on one side, and there is a gravel pathway running through Parcel I that allows access to Parcel II. The railway whose tracks border Parcel II, CSX, owns a right-of-way easement on the property

1. We deny Belmont's Motion for Leave to File Surreply Brief in Response to Appellant's Reply Brief, as well as Indiana Regional's Motion in Opposition to Appellee's Motion for Leave to File Surreply Brief in Response to Appellant's Reply Brief and its Motion for Leave to File Surreply Brief in Response to Appellee's Surreply Brief.

on which its tracks lie rather than a fee interest.

Prior to 1993, all three parcels were owned by H.C. Jackson, Inc. (Jackson) as a single parcel of real estate. On December 30, 1993, Jackson, as debtor in possession while in bankruptcy, conveyed Parcels I and III to Belmont Warehousing Complex, Inc. (BWC) and Parcel II to Indiana Regional "as it was" via special corporate deeds. On or about May 30, 2003, a sheriff's deed conveyed Parcels I and III to LaSalle Bank. On or about February 6, 2004, Belmont purchased Parcels I and III from LaSalle Bank for more than $2,000,000. At the time Belmont purchased Parcels I and III, the legal description of Parcel I did not include an express easement burdening Parcel I and benefitting Parcel II; nor was there a recorded easement on Parcel I.

From the date that Belmont purchased Parcels I and III in 2004 until 2008, Belmont did not notice any apparent or continuous use of Parcel I to benefit Parcel II, other than one incident where Indiana Regional used Parcel I to access Parcel II and dump dirt shortly after Belmont purchased the property. However, in September 2008, individuals attempted to cross Parcel I in order to access Parcel II, and Belmont built a fence blocking Indiana Regional's access to the gravel pathway running through Parcel I.

On September 29, 2008, Indiana Regional filed a Complaint for Declaratory Judgment and Damages, asserting in Count I that it had an easement implied from prior use on Parcel I through which it could access Parcel II; in Count II that it had an easement implied by necessity on Parcel I; in Count III that it had an easement by prescription on Parcel I; and in Count IV that Belmont had committed tortious interference with Indiana Regional's contract with its tenant by interfering with the tenant's access to Parcel II. On June 4, 2009, Indiana Regional filed a motion for partial summary judgment as to Count II regarding an easement implied by necessity. On December 15, 2009, Belmont filed a cross-motion for partial summary judgment as to Count II, as well as a motion for summary judgment as to Counts I, III, and IV.

On January 28, 2011, the trial court held a hearing regarding the opposing cross-motions for summary judgment. Subsequently, on March 17, 2011, the trial court entered its findings of fact, conclusions of law, and an order granting summary judgment on all four Counts in favor of Belmont and denying Indiana Regional's motion for partial summary judgment.

Indiana Regional now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *Warren v. Warren*, 952 N.E.2d 269, 269 (Ind.Ct.App.2011). Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id.* In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id.* The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *Id.* When the defendant is the moving party, the defendant must show that the undisputed facts negate at least one element of the plaintiff's cause of ac-

tion or that the defendant has a factually unchallenged affirmative defense that bars the plaintiff's claim. *Id.* Accordingly, the grant of summary judgment must be reversed if the record discloses an incorrect application of the law to the facts. *Id.*

■ In the present case, the trial court entered detailed and helpful findings of fact and conclusions of law in support of its judgment. Special findings are not required in summary judgment proceedings and are not binding on appeal. *Id.* However, such findings offer this court valuable insight into the trial court's rationale for its review and facilitate appellate review. *Id.*

## I. *Easement*

■ Indiana law recognizes that easements may be created by grant, prescription, or implication. *See William C. Haak Trust v. Wilusz,* 949 N.E.2d 833, 835 (Ind. Ct.App.2011). Indiana law further subdivides implied easements into easements implied by necessity and easements implied by prior use. *Id.* at 835–36. Indiana Regional proposes two alternatives with respect to its alleged easement: first, that it had an easement by necessity on Parcel I, and alternatively that it had an easement by prior use on Parcel I. Because we find that Indiana Regional had an easement by necessity on Parcel I, we will not address Indiana Regional's second argument with respect to easements implied by prior use.

■ An easement by necessity will be implied when "there has been a severance of the unity of ownership of a tract of land in such a way as to leave one part without any access to a public road." *Id.* at 836 (quoting *Whitt v. Ferris,* 596 N.E.2d 230, 233 (Ind.Ct.App.1992)). An easement by necessity may arise only at the time that the parcel is divided and only because of inaccessibility then existing. *William C.*

*Haak Trust,* 949 N.E.2d at 836. To demonstrate that the easement is a "necessity," a plaintiff must demonstrate more than that the easement would be beneficial or convenient. *Id.* If a plaintiff has another means of accessing his land, he may not claim a right to pass over the land of another. *Id.* This rule controls even if the alternate means of access would be more difficult or expensive for the plaintiff. *Id.*

Neither of the parties disputes that there was unity of title when the parcels were severed, but they do contest the issue of whether Indiana Regional had access to a public road by another means when Jackson severed the parcels in 1993. Parcel II is bordered on three sides by a railroad, but a public road, Reichwein Avenue, abuts the railroad and Parcel II. An adjoining property holder petitioned the Indianapolis Metropolitan Development Commission (IMDC) for vacation of the portion of Reichwein Avenue abutting Parcel II after the severance of the Parcels, and IMDC approved the vacations on October 1, 1998 by Declaratory Resolution. However, Belmont argues that Indiana Regional had access to Reichwein Avenue in 1993 when the parcels were severed. In response, Indiana Regional claims that it could not access Reichwein Avenue in 1993 because state law classifies riding, driving, or walking on or along the right-of-way or yard of a railroad company at a place other than a public crossing as a Class B misdemeanor. *See* Ind.Code § 8–3–15–3. Nevertheless, Belmont asserts that Indiana Regional could have petitioned the railway for access across the railroad's right of way. In support of this argument, Belmont cites *McConnell,* in which we analyzed the issue of necessity. *McConnell v. Satterfield,* 576 N.E.2d 1300, 1301 (Ind.Ct. App.1991).

In *McConnell,* Satterfield and McConnell owned adjoining properties known as

Lot A and Lot B. Lots A and B were previously owned jointly by Margaret and William Satterfield prior to their divorce. *Id.* During their ownership, the Satterfields installed a driveway between Lots A and B that connected to a garage the Satterfields used for storage. *Id.* Subsequently, the Satterfields divorced and the McConnells bought Lot B at a sheriff's sale. *Id.* After their purchase, the McConnells used the driveway between Lots A and B to access Lot B. *Id.* Margaret Satterfield erected a fence over the driveway, but the McConnells dismantled the fence and continued to use the driveway. *Id.* Margaret Satterfield filed a suit for ejectment, quiet title, and damages, and the McConnells filed a counterclaim alleging that they had an easement implied by necessity to use the driveway. *Id.* The trial court found against the McConnells on their counterclaim, finding that there was no easement implied by necessity. *Id.*

On appeal, the McConnells presented evidence that without an easement, they would have to tear out part of their pool deck and retaining wall or place a driveway over a septic system in order to gain access to their garage. *Id.* at 1302. Denying this argument, we affirmed the trial court and held that Satterfield's driveway was not necessary for ingress or egress from Lot B because the northern portion of Lot B was accessible pending development. *Id.* We noted that even though it would be difficult and expensive for the McConnells to access their garage through the northern portion of their land, those factors were insufficient to create a way of necessity. *Id.* In support of our holding, we cited *Hunt:* "[A] way of necessity must be more than convenient and beneficial, *for if the owner of the land can use another way, he can not [sic] claim by implication the right to pass over that of another to get his own.*" *Id.* (emphasis in original) (quot-

ing *Hunt v. Zimmerman,* 139 Ind.App. 242, 245, 216 N.E.2d 854, 856 (1966)).

■ We note critical distinctions between *McConnell* and the instant case. In *McConnell,* we found it decisive that the McConnells' property was not landlocked; it was accessible, pending further development of the McConnells' property, even though an alternate means of ingress and egress would be expensive and inconvenient for the McConnells. Belmont compares this reasoning to its argument that Indiana Regional could have taken steps to access its land by petitioning the railroad for the right to cross the railroad's right of way, instead of placing the easement on Belmont's parcel.

However, unlike the McConnells, Indiana Regional could not access a public road by developing its own land, even at an increased amount of expense or inconvenience. Belmont in effect requests us to require Indiana Regional to seek an easement from the railway in order to avoid burdening Parcel I with an easement, which we will not do. It is not the court's place to require a landowner to find an alternate easement in order to avoid inconveniencing a servient parcel burdened with an easement. Moreover, as we cannot even assert that the railroad would grant Indiana Regional a railroad crossing if petitioned, it is not appropriate for us to conclude that crossing the railroad's right of way is an alternate means of ingress and egress. Based on these facts, we conclude that an easement on Parcel I was necessary as there was no other route of ingress or egress that would have been more accessible to Indiana Regional, and the parties do not dispute that there was once unity of title between the parcels.

■■ In spite of our conclusion that an easement was necessary, an easement by necessity is equitable in nature, and Belmont also argues that it is not equitable

for the trial court to imply an easement of necessity on behalf of Indiana Regional when Belmont was a bona fide purchaser of Parcel I. Indiana courts have held that a "purchaser of real estate on execution ... who buys in good faith and without notice, is protected, as a bona fide purchaser for valuable consideration, against prior equities and unrecorded deeds." *Indi Investments, LLC v. Credit Union I*, 884 N.E.2d 896, 900 (Ind.Ct.App.2008), *reh'g denied* (quoting *Dodds v. Winslow*, 26 Ind.App. 652, 656, 60 N.E. 458, 459 (1901)). The theory behind the bona fide purchaser defense is that every reasonable effort should be made to protect a purchaser of legal title for a valuable consideration that does not have notice of the outstanding rights of others. *Keybank Nat. Ass'n v. NBD Bank*, 699 N.E.2d 322, 327 (Ind.Ct.App. 1998). In order to qualify as a bona fide purchaser, one must purchase in good faith, for valuable consideration, and without notice of the outstanding rights of others. *Bank of New York v. Nally*, 820 N.E.2d 644, 648 (Ind.2005).

■ Our supreme court has previously held that whatever fairly puts a person on inquiry is sufficient notice, where the means of knowledge are at hand; a purchaser that omits to inquire is chargeable with all the facts which, by a proper inquiry, he might have ascertained. *Mishawaka–St. Joseph Loan & Trust Co. v. Neu*, 209 Ind. 433, 442, 196 N.E. 85, 89 (Ind. 1935). One who fails to examine land in which he is about to purchase, and to inquire as to the legal rights of one in possession is not acting in good faith and will not be treated as a bona fide purchaser. *Id.* at 443, 196 N.E. 85; 90. In equity, means of knowledge, with the duty of using them, are equal to knowledge itself. *Id.* And as our court has recognized, the law has always imputed to a purchaser of land all information which would have been conveyed by an actual view of the premises, and when one purchases property where a visible state of things exists which could not legally exist without the property being subject to some burden, he is taken to have notice of the nature and extent of the burden. *Fenley Farms, Inc. v. Clark*, 404 N.E.2d 1164, 1171–72 (Ind.Ct.App. 1980).

■ Belmont argues that it purchased Parcels I and III for significant consideration and did not have notice that Indiana Regional had an interest in Parcel I because Indiana Regional did not have a recorded easement. In response, Indiana Regional claims that its use of the gravel pathway was open and continuous, as evidenced by the testimony in the affidavits it designated as evidence, which should have put Belmont on inquiry of Indiana Regional's interest in Parcel I. Also, the gravel pathway was physically visible to Belmont when it purchased the Parcels.

We agree with Indiana Regional's arguments based on our supreme court's holding in *Ellis*. In *Ellis*, a 20–acre tract of property was at issue. *Ellis v. Bassett*, 128 Ind. 118, 118, 27 N.E. 344, 344 (1891). The land bordered a public highway on its northern side and was owned by Henry Bassett, Sr. *Id.* For many years prior to his death, Henry Bassett, Sr. used a strip of ground along the east side of the property to reach the public highway to the north. *Id.* When Henry Bassett, Sr. died, five acres on the northern end of the property were set aside for his widow, Matilda Bassett, and fifteen acres were sold to the Appellee. *Id.* Matilda Bassett then sold her five-acre tract to the Appellant. *Id.* The roadway to the public highway passed over the five acres of land that had been set aside for Matilda Bassett. *Id.*

Appellant allowed Appellee to use the roadway during the initial years that he owned the northern five acres he had

bought from Matilda Bassett, but then he built a fence across the roadway to prevent Appellee from having access to his land and to the public highway. *Id.* Subsequently, Appellee sued Appellant to quiet the title to an easement over Appellant's land. *Id.* On appeal, the supreme court held that there was sufficient evidence to conclude that Appellant had notice of Appellee's easement prior to buying the five acres. *Id.* at 345. According to the supreme court,

> The facts stated in the complaint show that the way was a way of necessity that it *was open and visible, and had been used continuously for many years*.... this use was notice to the appellant.... It is a familiar rule that possession is sufficient to put a purchaser upon inquiry, and that means of knowledge is equivalent to knowledge.

*Id.* (emphasis added) (internal citations omitted).

■ Similarly, here, the gravel pathway was physically visible to Belmont before it purchased Parcels I and III. While the frequency with which Indiana Regional used the pathway after Belmont's purchase is in dispute, the affidavits clearly indicate that Indiana Regional openly and continuously used the gravel pathway prior to Belmont's purchase. Albert M. Donato, III testified in his affidavit that during the period from 1994 to 2003, Indiana Regional "regularly used the easement over Parcel I for the purposes of ingress and egress to Parcel I." (Appellant's App. p. 321). Likewise, Russ Zimmerman testified that during BWC's ownership of Parcel I, Indiana Regional "regularly used the easement over Parcel I for the purposes of ingress and egress to Parcel II." (Appel-

lant's App. pp. 326–27). Finally, Rocky Thomas has been a tenant occupying a portion of Parcel I since May of 1997 and testified that: "Apparent and continuous ingress and egress of traffic by [Indiana Regional] and its tenants to Parcel II from, in, upon, or over Parcel I had occurred from the beginning of Belmont's ownership until September 2008, when Belmont blocked access from, in, upon, or over the easement." (Appellant's App. p. 406).[2]

Based on our supreme court's holding in *Ellis* that visibility of an easement and continuous use can constitute notice to a purchaser of land, as well as the evidence of Indiana Regional's use cited above and the visibility of the gravel pathway, we find that Belmont was put on inquiry notice of the fact that Indiana Regional had an interest in Parcel I. Therefore, because a purchaser cannot be bona fide having notice of another's interest in the property, we also conclude that Belmont was not a bona fide purchaser. *See Mishawaka–St. Joseph Loan & Trust Co.,* 209 Ind. at 442, 196 N.E. at 89. Accordingly, equitable considerations do not weigh in favor of Belmont. As we have already concluded that an easement over Parcel I was necessary and there are no remaining genuine issues of material fact, we reverse the trial court's summary judgment on Count II in favor of Belmont and grant summary judgment on Count II in favor of Indiana Regional.

## II. *Tortious Interference with Contract*

Next, Indiana Regional argues that the trial court erred in granting summary judgment to Belmont with respect to Indiana Regional's tortious interference with contract claim. Specifically, Indiana

---

**2.** Belmont argues on appeal that Indiana Regional did not properly designate the Thomas or Emmons Affidavits. However, we conclude that Belmont waived this argument by failing to raise it before the trial court. *See Huntington v. Riggs,* 862 N.E.2d 1263, 1269 (Ind.Ct.App.2007), *trans. denied.* Therefore, we will consider the Affidavits designated.

Regional claims that Belmont knew about Indiana Regional's contract with its tenant and intentionally induced a breach of that contract by preventing the tenant from having ingress and egress to Parcel II when it constructed the fence blocking the gravel road.

■ Indiana has long recognized that intentional interference with a contract is an actionable tort. *Stoffel v. Daniels*, 908 N.E.2d 1260, 1270 (Ind.Ct.App. 2009). The five elements necessary for tortious interference with a contractual relationship are: (1) the existence of a valid and enforceable contract; (2) defendant's knowledge of the existence of the contract; (3) defendant's intentional inducement of breach of the contract; (4) the absence of justification; and (5) damages resulting from defendant's wrongful inducement of the breach. *Id.* Here, the parties dispute the existence of a valid and enforceable contract, Belmont's knowledge of the contract, and the absence of a justification for Belmont's actions. We will only address the first element as we find that the trial court erred in granting summary judgment.

With regards to the first element, Indiana Regional did not submit a signed contract into evidence before the trial court. Instead, Indiana Regional attempted to designate into evidence an unexecuted lease and checks representing its tenant's first month of rent and security deposit. According to Indiana Regional, the checks represented the fact that even though the lease was not signed, performance had begun on the contract, thereby proving its validity.

In response, Belmont filed a motion to strike the exhibits, arguing that the lease and checks were not properly authenticated. On April 6, 2010, the trial court initially granted Belmont's motion to strike. Indiana Regional then filed a reply to Bel-

mont's reply brief in support of its motion for summary judgment as to Counts I, III, and IV, and in response to Belmont's motion to strike the exhibits, requesting the trial court to vacate its order granting the motion to strike. Indiana Regional attached affidavits from David E. Emmons and Rocky Thomas (respectively, Emmons Affidavit and Thomas Affidavit) to this reply brief, asserting that the Affidavits authenticated the checks and unsigned lease. On April 19, 2010, the trial court granted Indiana Regional's motion and vacated its order granting Belmont's motion to strike the exhibits.

On appeal, Belmont argues that Indiana Regional failed to authenticate the checks and unsigned lease because it did not designate with specificity which parts of the Emmons and Thomas Affidavits it relied on. Belmont claims that the Emmons Affidavit is instead devoted to the use of the real estate during the time that BWC owned Parcel I, which is irrelevant to the issue of tortious interference with contract.

■ Indiana Trial Rule 56(C) requires a party opposing a motion to designate to the trial court all parts of the materials on which he or she relies. The rule requires sufficient specificity to identify the relevant portions of a document, and so, for example, designation of an entire document is usually inadequate. *Filip v. Block*, 879 N.E.2d 1076, 1081 (Ind.2008), *reh'g denied.* However, it is sufficient to designate an entire document if the document is required in its entirety. *See Boczar v. Reuben*, 742 N.E.2d 1010, 1017 (Ind. Ct.App.2001), *reh'g denied.*

■ We note that, as we found above, Belmont waived its claim that Indiana Regional did not properly designate the Thomas and Emmons Affidavits by failing to raise the issue before the trial court. *Huntington*, 862 N.E.2d at 1269. In light

of this waiver, we also determine that Indiana Regional raised a genuine issue of material fact with respect to whether a valid contract existed between Indiana Regional and its tenant. Indiana Regional submitted both an unsigned lease and checks purporting to be a rent check and a security deposit check. In addition, Emmons testified in his affidavit that "[a]t the time Belmont blocked access from, in, upon, or over the easement, it was visibly apparent that Indiana Regional had a tenant on Parcel II." (Appellant's App. p. 389). Similarly, Thomas testified that "[a]t the time Belmont blocked access from, in, upon, or over the easement, it was visibly and clearly apparent that [Indiana Regional] had a tenant on Parcel II." (Appellant's App. p. 406). Belmont designated the affidavit of Kevin Lawrence (Lawrence), wherein Lawrence testified that "[d]uring the entire course of Belmont's ownership of Parcel I, no evidence has indicated that a tenant was occupying the real estate owned by Indiana Regional." (Appellant's App. p. 256). This designated material indicates that there is a clear factual issue regarding the existence of a tenant and a contract, which is suitable for resolution only by a trier of fact. Accordingly, we reverse the trial court's grant of summary judgment in favor of Belmont with respect to Indiana Regional's tortious interference of contract claim and remand for further proceedings.

## CONCLUSION

Based on the foregoing, we conclude that the trial court erred in (1) granting Belmont's cross-motion for partial summary judgment and motion for summary judgment based on its findings that Indiana Regional did not have an easement on Belmont's property implied by necessity; and (2) granting Belmont's motion for summary judgment based on its finding that Belmont did not commit tortious interference with Indiana Regional's contract with its tenant. We (1) reverse the trial court's grant of summary judgment with respect to Indiana Regional's claim that it had an easement implied by necessity and grant summary judgment in favor of Indiana Regional; and (2) reverse the trial court's grant of summary judgment with respect Indiana Regional's claim that Belmont committed tortious interference with Indiana Regional's contract and remand to the trial court for further proceedings.

Reversed and remanded.

NAJAM, J. and MAY, J., concur.