**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**JANET A. McSHARAR**
Harrison & Moberly, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**DEBRA A. MASTRIAN**
**LIBBY Y. GOODKNIGHT**
**BRYAN S. STRAWBRIDGE**
Krieg DeVault LLP
Indianapolis, Indiana

**FILED**

Dec 28 2012, 9:06 am

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

REBECCA J. BARTLE,                     )
                                       )
    Appellant-Defendant,               )
                                       )
      vs.                           )        No. 29A05-1205-CC-246
                                       )
JACKSON STREET INVESTORS, LLC,         )
as Assignee of PAUL E. TURNER,         )
                                       )
    Appellee-Plaintiff.                )

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable Steven R. Nation, Judge
Cause No. 29D01-1003-CC-345

**December 28, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Rebecca J. Bartle and her husband owned a corporation and personally guaranteed two promissory notes executed by the corporation in June 2000. Payments were made on the notes in 2000 and 2001, but neither the corporation nor the Bartles made any payments on the notes thereafter. In March 2010, Jackson Street Investors, LLC ("Jackson Street"), the holder of the notes, filed a complaint against Rebecca and her husband to enforce the notes. Rebecca's husband was dismissed from the case, and Rebecca asserted as an affirmative defense that the cause of action was barred by the six-year statute of limitations for actions on promissory notes. Jackson Street moved for summary judgment and asserted that the debt was revived in 2006, when an entity that Rebecca was affiliated with made payments on the notes. In response, Rebecca asserted that Jackson Street had failed to establish as a matter of law that those payments had actually been applied to the notes. The trial court granted Jackson Street's summary judgment motion.

Rebecca now appeals, arguing that a genuine issue of material fact remains regarding whether the 2006 payments were actually applied to the notes. We agree and therefore reverse and remand for further proceedings.

**Facts and Procedural History**

The designated evidence most favorable to Rebecca, the nonmoving party, indicates that Rebecca, her husband John, and their two daughters owned Inverness Corporation ("Inverness"). In June 2000, Rebecca and John signed a promissory note made payable to Paul E. Turner ("Paul") in the amount of $150,000 ("Agreement 1"). Agreement 1 listed

2

Inverness as the debtor and was signed by John as its president and by both John and Rebecca as guarantors. Agreement 1 provided that interest on the note would be paid in the amount of $5000 per month in six installments beginning in August 2000 and that the principal amount would become due and payable on December 31, 2000, or at such other time as the parties jointly agreed. Later that month, Rebecca and John signed a second promissory note made payable to Paul in the amount of $50,000 ("Agreement 2"). Agreement 2 also listed Inverness as the debtor and was signed by John as its president and by both John and Rebecca as guarantors. Agreement 2 contained similar payment terms, except that the interest payments were to be $1666.67 per month.

It is undisputed that in 2000 and 2001, more than $60,000 in payments were made toward the balance due on Agreement 1. It is also undisputed that in 2000, payments totaling more than $5000 were made toward the balance due on Agreement 2. No additional payments were made on the notes by either Inverness or by John or Rebecca individually after 2001.

In 2009, Paul assigned his interest in the promissory notes to Jackson Street, which is managed by his son P. Eric Turner ("Eric"). In March 2010, Jackson Street filed a complaint against Rebecca and John, seeking to enforce the notes. John was dismissed from the case, and Jackson Street filed an amended complaint against Rebecca. Rebecca filed an answer and asserted as an affirmative defense that Jackson Street's cause of action was barred by the applicable six-year statute of limitations. *See* Ind. Code § 34-11-2-9 ("An action upon promissory notes, bills of exchange, or other written contracts for the payment of money

executed after August 31, 1982, must be commenced within six (6) years after the cause of action accrues.").

In November 2011, Jackson Street filed a motion for summary judgment. In support of its motion, Jackson Street designated an affidavit submitted by Eric that reads in pertinent part as follows:

> 4.     I regularly review the records, reports, and other documents routinely prepared and/or maintained by Jackson Street, for the benefit of Jackson Street, in the ordinary course and scope of business. Jackson Street's records are made or obtained in the ordinary course of business by persons who have a business duty to Jackson Street to make or provide these records. The records are made at or near the occurrence of the event or events for which they are made a record.
>
> ....
>
> 9.     In 2000 and 2001, payments totaling Sixty Thousand One Hundred Sixty-Four Dollars ($60,164.00) were made by John Bartle or one of his affiliated entities, including Americare Living Centers [III, LLC ("Americare")], toward the balance due and owing under Agreement 1.
>
> 10.    In 2000, payments totaling Five Thousand and One Dollar[s] ($5,00[1].00) were made by Inverness Corporation toward the balance due and owing under Agreement 2.
>
> 11.    Since those payments were made, I had numerous discussions with John Bartle, throughout the past several years, about the outstanding amounts owed under the Agreements. I received assurances from John Bartle that payments would be made or proposals for payments. At the time, I was handling business matters for Paul Turner, who is elderly and now in poor health.
>
> 12.    In 2006, additional payments totaling Fifty-Three Thousand Dollars ($53,000) were made to Paul Turner and have been applied to the remaining balances due under the [Notes]. After application of those additional payments, there is presently due and owing the principal sum of Fifty-One Thousand Eight Hundred Thirty-Six [Dollars] ($51,836.00) under Agreement 1, together with interest at the default rate of fifty percent (50%)

4

per annum set forth in Agreement 1; and the principal sum of Twenty[-]Nine Thousand Nine Hundred Ninety-Nine Dollars ($29,999.00) under Agreement 2, together with interest at the default rate of fifty percent (50%) per annum set forth in Agreement 2, plus default interest which continues to accrue on both Agreements.

13.     Effective July 8, 2009, for valid consideration, Paul Turner assigned all of his right, title and interest under [the] Agreements to Jackson Street.…  In connection with the Assignment, I reviewed the Agreements, along with Paul Turner's records evidencing payments.

14.     I learned that Inverness was put into receivership.  Consequently, I sent a demand letter to John Bartle and Becky Bartle, dated September 10, 2009, and demanded all amounts due under the Agreements.…

15.     Becky Bartle did not respond to the demand letter and the outstanding indebtedness has not been paid.

Appellant's App. at 58-61.  In its summary judgment brief, Jackson Street did not address

Rebecca's statute of limitations defense.

In December 2011, Rebecca filed a response to Jackson Street's summary judgment

motion that reads in pertinent part as follows:

[Jackson Street] is not entitled to summary judgment because there are disputed material facts in this case to enforce two promissory notes.  This case was commenced well after the applicable six (6) year Statute of Limitations. Moreover, [Jackson Street] has not demonstrated by credible, reliable, undisputed evidence that Rebecca Bartle either personally or through an authorized surrogate made payments on either promissory note in 2006 to extend the Statute of Limitations.  [Jackson Street] has presented no evidence to demonstrate that payments on these notes was [sic] made in 2006 by anyone, and the evidence provided through discovery was that certain checks … were paid to Paul Turner in 2006.  This does not prove conclusively that Fifty-Three Thousand Dollars was paid on those notes in 2006, thus extending the Statute of Limitations, as [Jackson Street] argues:  these checks do not prove that Rebecca Bartle authorized a third party to make partial payments on any notes or other obligations to extend the Statute of Limitations as to [Jackson Street's] expired promissory notes.

*Id*. at 75-76.

In support of her response, Rebecca designated her own affidavit, which reads in relevant part as follows:

1. I did not ask or authorize [Americare] in 2006 to pay any amount of money to either Paul E. Turner of Jackson Street Investors, LLC to satisfy in whole or in part any debt owed to either based upon Promissory Notes and Security Interests granted to and by Inverness Corporation in 2000 and by and in respect of Paul Turner.

2. I am not aware of [Americare] making any payment to either Paul Turner of Jackson Street Investors, LLC on my behalf or at my request in 2006 or at any other time to satisfy in part or in whole any debt owed to either based upon Promissory Notes and Security Interests granted to and by Inverness Corporation in 2000 by and in respect of Paul Turner.

3. I have not paid or caused to be paid any amount of money to either Paul Turner or Jackson Street Investors, LLC during or since 2006 to satisfy in whole or in part any indebtedness that I may have had to [sic] either based upon Promissory Notes and Security Interests granted to and by Inverness Corporation in 2000 by and in respect of Paul Turner.

4. Neither Paul Turner nor Jackson Street Investors, LLC brought an action, litigation, claim or request against me or to my attention at any time prior to March 2010 in respect of or alleging any deficiency in payment of Promissory Notes and Security Interests granted to and by Inverness Corporation in 2000 by and in respect of Paul Turner.

*Id*. at 81.

Rebecca also designated her answer to Jackson Street's amended complaint as well as copies of three ledger pages and four checks that Jackson Street had submitted in response to Rebecca's request for production of documents. The first ledger page is entitled "PROMISSORY NOTE $150,000$^{00}$ INVERNESS CORP. JOHN BARTLE" and contains entries documenting receipt of eight payments in 2000 and 2001. *Id*. at 95. The second

6

ledger page is entitled "PROMISSORY NOTE – $50,000 INVERNESS CORP. JOHN BARTLE" and contains entries documenting receipt of three payments in 2000. *Id*. at 97. The third ledger page is entitled "JOHN BARTLE INTEREST INCOME" and contains entries documenting receipt of four payments totaling $53,000 in 2006. *Id*. at 102. Those entries correspond with copies of four checks from Americare that were made to Paul and signed by Larry M. New. A memo inscription on one of the checks reads, "Interest expense." *Id*. at 100. Two other checks also bear a memo inscription, but the copies of those checks are mostly illegible. *Id*. at 101, 103.[1]

The trial court allowed Jackson Street to file a reply and designate supplemental evidence in support of its summary judgment motion. In its reply, Jackson Street argued that the 2006 payments by Americare should be attributed to Rebecca based on her affiliation with that entity (as described in a 2006 order issued by a federal district court in unrelated litigation) and thus they "are sufficient to start the statute of limitations anew as of 2006." Appellee's App. at 3. Jackson Street also submitted a supplemental affidavit from Eric, which reads in pertinent part as follows:

> 3.    Over the years, I have done a number of business deals with John Bartle and companies affiliated with him and [Rebecca], including [Inverness, Americare] and various other Americare entities. I was introduced to John Bartle through my father, Paul E. Turner, who had previously done business deals with him and his affiliated companies.

> 4.    With respect to the promissory notes at issue in the present lawsuit, I had many conversations with John Bartle throughout the years, including in 2006, 2007, and 2008, regarding the outstanding amount owed

---

[1] In her reply brief, Rebecca says that those memo inscriptions read "Interest Expense" and "Interest John Bartle." Appellant's Reply Br. at 8.

and when payments would be made. During those conversations, John Bartle made assurances that the notes would get paid off after the next business deal. Correspondence from John Bartle was usually on letterhead from an "Americare" entity.

Appellant's App. at 123-24.

After a hearing, on March 15, 2012, the trial court issued an order granting Jackson Street's motion for summary judgment that reads in pertinent part as follows:

> The Court finds no genuine issue of material fact regarding the additional payments made as late as 2006 in the amount of $53,000 which were paid towards the loans. Although [Rebecca] argues that [Jackson Street] has not provided sufficient proof of the existence of these payments, the Court finds that the designated evidence before the Court is sufficient for the Court to find that these payments were in fact made by [Americare] and were applied towards the promissory notes originally executed by Inverness Corporation and guaranteed by [Rebecca].
>
> It is further undisputed that there remains a balance on both notes, in the amounts of $51,836 and $29,999, respectively, that the notes provide for interest, attorney fees and costs of collection in the event of default.
>
> Rather than presenting genuine issues of material fact, [Rebecca's] designated exhibits and arguments present issues of law which may be properly resolved at the summary judgment stage. The first issue is whether the statute of limitations bars [Jackson Street's] claims. The second related issue is whether the payments made in 2006 by a separate entity revive [Rebecca's] liability under her guarantee. As explained below, the Court finds that the law supports [Jackson Street's] positions and that summary judgment is proper.
>
> As to the first issue, the Court finds that the long-established law of the State of Indiana holds for the premise that a single partial payment on a debt, even after the statute of limitations has passed, is sufficient to revive the debt and start the statute of limitations anew. See Barrett v. Sipp, 98 N.E. 310, (Ind. Ct. App. 1912) and Weidenhammer v. McAdams, 98 N.E. 883 (Ind. Ct. App. 1912). In this case, there is no genuine issue of material fact that payments were made and applied to the debts as late as 2006. Therefore, the Court finds, as a matter of law, that the applicable statute of limitations was begun anew with the last of those payments on October 19, 2006. This cause

of action was filed on or about March 17, 2010, well within the six-year period of limitations begun on October 19, 2006.

As to the second issue, [Rebecca] argues that she did not know of the 2006 payments and did not authorize the payments to be made. [Rebecca] further argues that her stated lack of knowledge creates a genuine issue of material fact as to whether she is responsible for the payments and has therefore renewed and acknowledged the debt. The Court notes, however, that [Rebecca's] disclaimer, by itself, is insufficient to raise a genuine issue of material fact. [Rebecca's] statement, by its very nature, is self-serving. Furthermore, [Rebecca's] statement is not supported by the other designated evidence in this case.

The Court finds no genuine issue of material fact that the original debtor, Inverness Corporation, is owned mostly by [Rebecca], that Inverness Corporation was originally one of the owners of [Americare], and that one of the members of [Americare] is U.S. Holding, a company owned 90% by [Rebecca], and of which she is the managing member. Although the designated evidence makes it clear that [Rebecca] left the business functions and operations to others, the Court finds that, as a matter of law, she cannot escape liability in this case by simply claiming ignorance over the actions of her own companies.

[Jackson Street], in its Reply brief, cites the case of Merchants National Bank and Trust Company of Indianapolis v. H.L.C. Enterprises, Inc., 441 N.E.2d 509 (Ind. Ct. App. 1982) to support its argument that knowledge of the payments made by [Americare] should be imputed to [Rebecca] because of her close connections to [Americare] and its related entities. Indeed, the other individuals [Rebecca] left to conduct the day-to-day business of [Americare] and the related entities were her husband and a third individual, Larry New.

The Court finds that the holding set forth in Merchants National Bank is applicable here. Even if the Defendant did not have any actual or direct knowledge of the payments made in 2006 by [Americare], the Court finds no genuine issue of material fact that [Rebecca] had such close ties and ownership interests in [Americare], Inverness Corporation and their related business entities that, as a matter of law, she should be imputed such knowledge.

Finally, the Court finds that there is no genuine issue of material fact with regard to the issue of attorney fees.

WHEREFORE, for the foregoing reasons, the Court finds that [Jackson Street's] Motion for Summary Judgment shall be GRANTED.

*Id*. at 8-10.

Rebecca filed a motion to correct error, which the trial court denied. This appeal ensued.

### Discussion and Decision

In her original brief, Rebecca purports to appeal both the trial court's denial of her motion to correct error and its grant of Jackson Street's summary judgment motion. Jackson Street asserts, and Rebecca effectively concedes in her reply brief, that she has waived any argument regarding the former by failing to "provide any legal authority or cogent argument." Appellee's Br. at 11. Therefore, we address only the propriety of the trial court's summary judgment ruling.

Summary judgment is appropriate only where the designated evidentiary material demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). Genuine issues of material fact exist where facts concerning an issue which would dispose of litigation are in dispute. On appeal, we must carefully scrutinize an entry of summary judgment to ensure that the non-prevailing party is not denied his or her day in court. We must apply the same standard as the trial court and resolve disputed facts or inferences in favor of the non-moving party.

*Gen. Housewares Corp. v. Nat'l Sur. Corp.*, 741 N.E.2d 408, 412 (Ind. Ct. App. 2000) (some citations omitted). The party appealing the grant of summary judgment has the burden of persuading us that the trial court's ruling was improper. *Ind. Reg'l Recycling, Inc. v. Belmont Indus., Inc.*, 957 N.E.2d 1279, 1282 (Ind. Ct. App. 2011), *trans. denied* (2012). "Special findings are not required in summary judgment proceedings and are not binding on appeal.

10

However, such findings offer this court valuable insight into the trial court's rationale for its review and facilitate appellate review." *Id*. at 1283 (citation omitted).

At issue here is whether Jackson Street's cause of action is barred by the six-year statute of limitations for actions on promissory notes. The parties do not specify when the cause of action accrued, but it is undisputed that the action would be time-barred unless the 2006 payments from Americare revived the debt created by the promissory notes. "[I]n summary judgment proceedings, as at trial, the burden of establishing the existence of material affirmative defenses is on the defendant." *Celina Mut. Ins. Co. v. Forister*, 438 N.E.2d 1007, 1009 (Ind. Ct. App. 1982). Once the party asserting a statute of limitations defense makes a prima facie case, the burden shifts to the opposing party "to present such facts that will prevent the running of the statute." *City of E. Chicago, Ind. v. E. Chicago Second Century, Inc.*, 908 N.E.2d 611, 618 (Ind. 2009). Based on the designated evidence, we conclude that Rebecca has carried her prima facie burden and that Jackson Street has failed to establish the absence of a genuine issue of material fact as to an essential element of her statute of limitations defense.

A century ago, this Court stated that

a *voluntary* part payment upon an existing debt is *prima facie* sufficient to revive such debt and start anew the statute of limitation upon the theory that such payment is in the nature of an admission or acknowledgment by the debtor of his liability for the whole demand, and, from the fact that he made the payment a new promise on his part to pay the remainder of the debt may be implied.

*Barrett v. Sipp*, 50 Ind. App. 304, 314, 98 N.E. 310, 314 (1912) (quotation marks omitted).

"'In order to take a case out of the statute of limitations by a part payment, it must appear, in

11

the first place, that the payment was made on account of the debt, secondly, *it must appear that it was made on account of the debt for which the action is brought.*'" *Id*. at 310, 98 N.E. at 312 (quoting *Prenatt v. Runyon*, 12 Ind. 174, 178 (1859)) (emphasis in *Barrett*).[2]

Here, a genuine issue of material fact exists regarding whether the 2006 payments by Americare were made on account of the debt for which Jackson Street's action was brought, namely the Inverness debt created by Agreement 1 and Agreement 2. Unlike the ledger sheets documenting the Inverness debt payments in 2000 and 2001, the ledger sheet documenting the 2006 payments and the corresponding checks from Americare do not mention either Inverness or the promissory notes.[3] Instead, they mention only John's name and interest expense/income. Given Eric's statement that both he and Paul had previously conducted business with John and his affiliated companies, including Americare, we conclude that these documents fall well short of establishing as a matter of law that the 2006 payments were made on the Inverness debt.

---

[2] We note that the quoted material from *Barrett* as printed in the official Indiana Appellate Court Reports differs slightly from that printed in the North Eastern Reporter.

[3] Likewise, the Americare checks do not mention Rebecca. *Cf. Mozingo v. Ross*, 150 Ind. 688, 692 (1898) ("[A] partial payment can serve only to suspend the running of the statute of limitations as against the party making the payment, by himself or duly authorized agent, and the fact that the one making the payment is the principal debtor does not alter nor change the rule as to other debtors who executed the note or obligation as his sureties."). Given our resolution of this case, we need not address whether knowledge of the 2006 payments should be imputed to Rebecca based on her affiliation with Americare. We note, however, that Jackson Street did not move to strike Rebecca's affidavit, which disclaimed any knowledge or authorization of those payments, and that the self-serving aspect of designated evidence affects only its weight, not its admissibility. *Reed v. City of Evansville*, 956 N.E.2d 684, 696 (Ind. Ct. App. 2011), *trans. denied* (2012). We also note that we are unaware of any Indiana cases holding that a veil-piercing/alter-ego theory may be used to revive a debt against a non-paying guarantor.

This leaves us with Eric's self-serving statement that the 2006 payments were applied to the Inverness debt, which is insufficient to sustain the trial court's grant of summary judgment in favor of Jackson Street. *See Insuremax Ins. Co. v. Bice*, 879 N.E.2d 1187, 1190 (Ind. Ct. App. 2008), *trans. denied*. ("Summary judgment is inappropriate if a reasonable trier of fact could choose to disbelieve the movant's account of the facts. It is error to base summary judgment solely on a party's self-serving affidavit, when evidence before the court raises a genuine issue as to the affiant's credibility. Inconsistencies and evasive language within the movant's designated evidence may form a basis for denying summary judgment.") (citations, quotation marks, and brackets omitted); *Owens Corning Fiberglass Corp. v. Cobb*, 754 N.E.2d 905, 909 (Ind. 2001) ("If there is any doubt as to what conclusion a jury could reach, then summary judgment is improper."). Therefore, we reverse and remand for further proceedings.

Reversed and remanded.

RILEY, J., and BAILEY, J., concur.